BUGG *v.* TOWN OF HOULKA.

[84 South. 387. In Banc. No. 21268.]

1. MUNICIPAL CORPORATIONS. *Identified book of ordinances competent to prove ordinance.*

On the trial of a defendant charged with the violation of a municipal ordinance, a book identified by the mayor as the ordinance book in which all ordinances of the municipality are kept and recorded, and there is nothing in the evidence to impeach the document as a public record, is competent testimony to prove the existence of the ordinance in question; and, in the absence of evidence to the contrary, at least, makes a *prima-facie* case that the ordinance is one duly passed and in existence.

2. CRIMINAL LAW. *Witnesses. Deaf-mutes may give evidence by signs or in writing or through an interpreter.*

If deaf-mutes have sufficient understanding to comprehend facts about which they undertake to speak, and appreciate the sanctity of an oath, they may give evidence by signs, or through an interpreter, or in writing, and such testimony, through an interpreter, is not hearsay.

3. WITNESSES. *Evidence of deaf-mute given through an interpreter admissible.*

   The evidence of a deaf-mute given through an interpreter is admissible if the interpreter understands the signs usually employed by the witness and can well and truly interpret the meaning.

APPEAL from the circuit court of Chickasaw county.

HON. CHAS. LEE CRUM, Judge.

Will Bugg was convicted of a violation of an ordinance of the Town of Houlka, by unlawfully and feloniously stealing meat, and he appeals. Affirmed.

*J. E. Harrington,* for appellant.

1. The first assignment of error is the failure of the town to prove a valid ordinance. No valid ordinance was proved. The mayor was not on the board when the alleged ordinance was passed, nor did he have the minutes of the board showing the passage of the ordinance. Section 3405, Code 1906, Hemingway's Code, section 5935, provides the way that town ordinances shall be passed, and the burden is upon the Town of Houlka in this case to show that they have a valid ordinance, passed as required by this section of the Code. *Morris* v. *Greenwood,* 73 Miss. 430, 19 So. 105; *Sample* v. *Verona,* 94 Miss. 264, 48 So. 2; *Corinth* v. *Sharp,* 107 Miss. 696, 65 So. 188. These ordinances must be proved and the court will not take judicial notice of the same. *Naul* v. *McComb City,* 70 Miss. 699, 12 So. 903.

2. We think the evidence in the case is insufficient to support the verdict of the jury, because we think that it fails to show the defendant guilty beyond a reasonable doubt. The only witness that identified the meat alleged to have been stolen, which was found in the possession of the defendant was the witness Will Darden, better known as Dummy, and we have him testifying that Will Bugg was up behind his chimney when in fact he states

further on in the testimony that he had not seen him that afternoon, and still further on we have him testifying that Will Bugg was outside waiting for some one to jar the house, and that then he walked into the house, when later it appears that he did not know that Will Bugg was there, and in fact did not see him, showing that he was giving what he surmises to be facts as absolute truth.

Necessarily the defendant was very much limited in his cross-examination of the defendant by reason of the fact that the only way to communicate to him was through an interpreter. We find Darden testifying that his meat had been hung with strings, when the uncontradicted testimony of the witnesses who saw the meat of the defendant say the same had been strung with wire. We think the evidence against the defendant is too weak to sustain a conviction.

3. It was error to allow the interpreter to testify to the answers, when he stated that there were questions and answers that he might not be able to give on cross-examination. The right of cross-examination will not be abridged. *Mask* v. *State,* 32 Miss. 405; *Walton* v. *State,* 78 Miss. 303, 39 So. 690; See, also, 40 Cyc. 2473, 2475, and 2476.

4. The affidavit was made before the mayor of the Town of New Houlka, and the judgment of the court was rendered, or purported to be rendered by the Mayor of Houlka. The court will take judicial notice that there are two towns in the Chickasaw, one being the Town of Houlka, and the other the Town of New Houlka. As the judgment appealed from was in favor of Houlka, Mississippi, and the judgment rendered in the circuit court was in favor of New Houlka, the judgment of necessity would have been void, and the verdict should have been set aside on the motion for new trial, and the proceeding so amended as to present a case to the jury of which the circuit court had jurisdiction.

*J. H. Ford,* for appellee.

The general ordinance of the town making all offenses amounting to misdemeanor under the state laws offenses against the town was properly identified by the mayor and read and introduced to the jury. It was in due form and showed on its face that it had been properly passed according to law.

The evidence of Bill Dummy was competent. However, the conviction in this case does not rest solely on his testimony. There was other and ample testimony showing that this helpless deaf and dumb negro was robbed of his meat by this defendant. The meat was properly identified. There was absolutely no dispute between the town and the defendant as to whether Dummy's meat was hung by wire. This is undisputed. It was hung by a wire and then a toesack slipped up over it and tied with a string. This string had been cut and left there at the place from which the meat had been stolen.

The meat taken by the officers with the search warrant in the house of the defendant next day, concealed, was identified as the meat stolen from Dummy. It had been hung by wire. There was green grass in the sack where the officers found the meat and other evidences that this meat had been recently placed there.

If this defendant can escape the sentence of the law simply because one of the main witnesses for the prosecution happens to be deaf and dumb and has to testify through an interpreter, such folks have no protection under the law and they may be deprived of their property by thieves who go unwhipped of justice.

Stevens, J., delivered the opinion of the court.

Appellant was charged with the violation of an ordinance of the town of New Houlka, the affidavit before

the mayor charging that the defendant did ''unlawfully, willfully, and feloniously take, steal, and carry away a certain lot of meat, bacon, hams, and shoulder of meat,'' the property of Bill Dummy, alias William Darden, of the value of twenty dollars.

On the trial of the appeal in the circuit court appellant was convicted, and now challenges the correctness of the learned circuit court's judgment under four assignments of error: First, the alleged failure of the town to prove a valid ordinance; second, that the evidence was insufficient; third, that the trial court permitted the prosecutor, Bill Dummy, a deaf-mute, to testify through an interpreter; it is alleged that both the witness and the interpreter were incompetent; fourth, it is said that the affidavit was sworn out before the mayor of New Houlka, while the judgment of conviction was rendered by the mayor of Houlka.

On the trial the mayor of New Houlka was introduced, and testified that the town kept an ordinance book, and that all ordinances of the town were recorded and appeared of record in the ordinance book; that the ordinance book was delivered to him as such when he was inducted into the mayor's office, and had been in his possession ever since. Ordinance No. 14 was thereupon identified by the mayor and read to the jury. This ordinance states upon its face that it was duly passed at a regular meeting of the town council. It was in due form and appeared to be valid upon its face. This showing is not denied by counsel for appellant, but it is insisted that the mayor on cross-examination admitted that he was not present when the ordinance was passed, and could not of his own knowledge testify that the ordinance was in fact passed, and, further, that the minutes of the town council showing the passage of the ordinance was not introduced.

The ordinance book was sufficiently identified by the mayor, and it was vouched for as a genuine public rec-

ord.  There was no effort to impeach the document, and the ordinance is properly in evidence.  There was at least a *prima-facie* case on this point.

It is contended that the evidence of Bill Dummy, alias Will Darden, was incompetent.  The objection appears to go both to the competency of the witness and of the interpreter, one Wilber Walker.  The court examined the interpreter for the purpose of inquiring into his competency, and in the course of this examination the interpreter stated that there were several deaf-mutes in the neighborhood, that there was a method of communication by signs, and that the witness was familiar with this method of communication, and was in fact able to communicate and carry on a conversation with them through signs.  The witness, however, admitted on cross-examination that there were some questions that he felt sure he could not ask, and there might be some answers he could not interpret.

From the testimony itself it affirmatively appears that all material questions and answers were propounded and interpreted by the witness, and there is no showing on this appeal that the deaf-mute did not testify to all material facts within his knowledge pertaining to issues in the case.  In one or two instances the interpreter was unable to put the question in the form in which counsel asked them, but the omissions relate to inquiries more or less immaterial.  There was a search warrant sworn out, and the officer making the search testified to acts which tended strongly to prove the guilt of the accused.  So it is that the testimony of Bill Dummy was strongly corroborated.

It is stated in Wharton's Criminal Evidence (10th Ed.), vol. 1, section 375.

"Deaf-mutes; Competency as Witnesses.—Deaf-mutes were formerly regarded as idiots, and therefore incompetent to testify, but to-day this presumption has disappeared, and the modern doctrine is that, if they have

sufficient understanding to comprehend the facts as to which they speak, and appreciate the sanctity of an oath, they can give evidence by signs, or through an interpreter, or in writing. He can express himself in writing if, through this means, he can be more clearly understood, or through a sworn interpreter by whom his signs can be interpreted. . . . Such testimony, though made through interpretation, is not hearsay, nor is it excluded by the fact that the witness can write.''

Mr. Blackstone stated, in substance, that one who was born deaf and dumb was presumed to be incapable of understanding and was considered in law an idiot. But such a doctrine was announced at a time when eleemosynary institutions were few and when there was no adequate system of education for deaf-mutes. The doctrine announced in Blackstone's day has been largely relaxed, if not altogether abolished, and deaf and dumb persons are now generally accepted as competent witnesses. Of course, the showing must be made in any given case that the witness has a system of communication, and, if otherwise competent, his testimony is received. So much for the testimony of the deaf-mute.

There is no merit, we think, in the argument that the interpreter was incompetent. It has been ruled that the interpreter for a deaf and dumb person need not be an expert if he can sufficiently understand the signs usually employed by the witness, and can well and truly interpret the meaning. There is no objection in this case to the relationship or interest of the interpreter, and could be none. No material prejudice of appellant's rights is shown.

On the competency of the deaf-mute we refer to *State* v. *Weldon,* 39 S. C. 318, 17 S. E. 688, 24 L. R. A. 126, and case note.

On the competency of the interpreter and the admissibility of evidence through an interpreter, we refer to *Commonwealth* v. *Vose,* 157 Mass. 393, 32 N. E. 355, 17

L. R. A. 813, and case note, and likewise to the case note to *State* v. *Fong Loon* (Idaho) found in L. R. A. 1916F, 1206.

The testimony is amply sufficient to support a conviction. The record affirmatively shows that the prosecution was before the mayor of New Houlka, and the judgment of conviction appealed from is in favor of New Houlka. There can be no merit, therefore, in the contention that the record shows two towns.

*Affirmed.*