WHITE *v.* STATE.*

(Division A. April 12, 1926.)

[107 So. 755. No. 25332.]

1. HOMICIDE. *Instruction defining manslaughter and authorizing verdict thereon was not erroneous in murder prosecution, although facts showed homicide was murder or self-defense.*

   In prosecution on indictment for murder, instruction defining manslaughter and authorizing verdict thereon was not erroneous, although facts of case showed that homicide was murder or self-defense.

2. HOMICIDE. *Holding revival meeting in courthouse yard during murder prosecution held not reversible error, where nothing prejudicial to defendant occurred at such meeting.*

   Holding revival meeting in courthouse yard during progress of murder trial *held* not to constitute reversible error, where it was not shown that anything prejudicial to interests of defendant occurred during such meeting.

3. CRIMINAL LAW. *Remark of bailiff to another in presence of jury trying murder case that "another negro had just been killed" held not reversible error, where it was not shown that jury was influenced thereby.*

   In murder prosecution, remark of one bailiff to another in presence of jury after retiring that "another negro had just been killed"

*held* not reversible error, in absence of showing that it created undue influence which might reasonably be presumed to have had effect on verdict of jury, or opportunity for improper influence to have been exerted.

4. CRIMINAL LAW.

When verdict is sought to be declared void because of improper conversation by bailiff in presence of jury, some taint therein must be shown.

---

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 1080, n. 79; Homicide, 30CJ, p. 440, n. 99; p. 441, n. 16 New; p. 452, n. 38; Instructions respecting grade of offense in homicide, 13 R. C. L., p. 759; 3 R. C. L. Supp., p. 80.

APPEAL from circuit court of Winston county.

HON. T. L. LAMB, Judge.

Shirley White was convicted of manslaughter, and he appeals. Affirmed.

*Broom & Gober,* for appellant.

There is no element of manslaughter in this case. The giving of an instruction on manslaughter in this case is equivalent to extending an invitation to the jury and suggesting that they return a compromise verdict in the case.

Manslaughter is clearly defined in section 966, Hemingway's Code. This act was not done in the heat of passion. That period had surely passed. The appellant had run a mile; he had ridden further still; he had attempted to borrow, beg or buy a gun; he had consulted with his companion and they had discussed the situation; therefore, it was a malicious murder or done in necessary self-defense.

We are not unmindful of the rule laid down in *Calicoat* v. *State,* and *Strickland* v. *State,* 95 So. 318, and *Stevenson* v. *State,* 100 So. 525. The joker in this rule is that the court reserves the right to say after considering the whole record whether or not the rights of the appellant have been prejudiced. We earnestly submit that

the reasoning of the Calicoat case and others following it is unsound and they ought to be overruled. All we can do is to believe it and say it. We believe it sincerely and say it respectfully.

But this case can be reversed without doing violence to the rule, because the rule is predicated upon the proposition that in a case where the evidence would warrant a conviction of murder and the jury found him guilty of manslaughter, then in such case the judgment will not be disturbed. We maintain that a verdict of murder on the evidence in this case would not be permitted to stand.

If it was error to give a manslaughter instruction where there was no element of manslaughter, then in this case the giving of it was prejudicial error because without it they would have been obliged to find him not guilty.

*H. H. Rodgers,* also, for appellant.

This case should be reversed as the conduct of the sworn deputies who kept the jury was such that it offered an opportunity for the jurors to be contaminated or unduly influenced. This court has held that where the opportunity was offered that it was not a question whether the jury was influenced by said opportunity; but if such an opportunity was offered, then the cause should be reversed. *Hare* v. *State,* 4 How. 187, 1 Mor. St. Cases, 133; *Bolls* v. *State,* 13 S. & M. 398; 1 Mor. St. Cases, 476.

It is not necessary, as quoted from the above case, to show that the verdict is corrupt; it is enough to show that the common-law rule was violated, which rule prohibits the jury from having an opportunity to be influenced from an outside source. And this presumption prevails unless the state demonstrates by affirmative proof that they were not influenced by that opportunity. *Durr* v. *State,* 53 Miss. 425; *Carter* v. *State,* 29 So. 148; *Organ* v. *State,* 26 Miss. 78.

This case must be reversed for the reason that after the jury had finally retired to solemnly consider their verdict as to the guilt or innocence of this defendant, the deputies, Dempsey and Winborn, talked to each other in their presence, advising the jury that another negro had just been shot or killed and that he had been shot in the head in the town of Louisville, which was calculated to and, as a reasonable conclusion, did influence their minds or was calculated to do so, prejudicing them then and there in favor of the state and in favor of a verdict of guilty.

*J. A. Lauderdale*, special assistant attorney-general, for the state.

The testimony offered on the motion for a new trial —that a protestant evangelist was holding a meeting near the courthouse during the trial of this cause—does not very strongly support the allegations in the motion. Appellant failed to show that the jury was influenced or had any opportunity to be influenced in any way by this meeting.

The alleged statement of one deputy in charge of the jury to the other deputy, in the presence of the jury, before their verdict was returned into open court, does not show that the verdict of the jury was influenced thereby, or that any opportunity was offered thereby to influence, prejudice or corrupt the jury against appellant.

In *Ned v. State*, 33 Miss. 364, it was shown that other persons had communications with the jury. It was further shown what the communications were and that they in no wise related nor referred to the case on trial and this court held that the case should not be reversed for this reason. See, also, *Dickey v. State*, 86 Miss. 525; *Johnson v. State*, 106 Miss. 94; *Taylor v. State*, 52 Miss. 84; 30 So. 657; *Alexander v. State*, 22 So. 871.

The action of the court below in granting an instruction defining manslaughter and authorizing the jury to

find a verdict of guilty of manslaughter, was not error. Counsel for appellant concede this to be the law, unless this court overrules the doctrine announced by it in the cases of *Calicoat* v. *State,* 95 So. 318; *Strickland* v. *State,* 95 So. 318; *Stevenson* v. *State,* 100 So. 525; all cited by counsel for appellant. This doctrine is now too well established to be disturbed. As a matter of fact, the proof in this case justified the granting of the manslaughter instruction.

McGOWEN, J., delivered the opinion of the court.

Shirley White was convicted in the court below of manslaughter on an indictment charging him with murder in the killing of Lonnie Wooten, and was by the court sentenced to a term of twenty years in the state penitentiary.

When the record was originally presented here, a copy of the judgment and the transcript showed only eleven jurors named as trying the case, whereupon, by *certiorari,* the record has been corrected and this point argued in the briefs is eliminated.

Conceding and agreeing that counsel for the appellant are correct in their statement that the facts of the case show that the homicide was murder or self-defense, we desire to state now that the question of giving the manslaughter instruction under such circumstances as being assignable for error has, we think, been finally determined by this court in the cases of *Calicoat* v. *State,* 95 So. 318, 131 Miss. 169, *Strickland* v. *State,* 95 So. 318, 131 Miss. 169, and *Stevenson* v. *State,* 100 So. 525, 136 Miss. 22. Under these cases the action of the court below in granting an instruction defining manslaughter and authorizing the jury to find a verdict of guilty of manslaughter was not error.

Much of the space of the several briefs of counsel filed in this case is devoted to this question which we here notice for the purpose of saying that we decline to overrule the above cases, as this doctrine is too well understood

and too thoroughly established by this court to be now disturbed or overruled.

We find no reversible errors in the record as to the testimony admitted or excluded.

Something is said in the assignment of errors and in the briefs of counsel about a revival meeting being held in the courthouse yard during the progress of this trial. It is sufficient to answer with reference to this assignment that nothing prejudicial to the interests of the defendant is shown to have occurred in and about this revival, and we cannot hold that revivals *per se* are injurious because held near a courthouse where nothing transpired or is shown to have occurred with reference to the jury. It is not even shown that any member thereof heard anything connected with the revival services.

It is assigned for error that the court permitted the deputies (the bailiffs) in charge of this jury, J. Y. Dempsey and W. C. Winborn, to inform the jury while considering the case and before they reported their verdict into open court, that "another negro had just been killed in the town of Louisville;" that this information unlawfully given and received in the jury box greatly prejudiced said jurors and gave them an unlawful opportunity to be affected by such information.

On motion for a new trial, much testimony was taken as to the above-quoted remark by one bailiff to another occurring after they had retired to consider their verdict and probably after they had voted to convict the defendant of manslaughter. This remark was not made in the presence of the court, and the quotation above appears to have been the remark of one bailiff to another as one was going into the door of the jury room. It is true that it is the effort of the courts to see that a jury tries a case from the beginning of the trial to the end untrammeled and uninfluenced by extraneous statements or circumstances, but this remark here cannot be distorted in any wise as relating to or referring to the defendant's case then on trial, and no reason can be deduced therefrom that it would be possible for any single juryman to

have been influenced in his verdict in this case in the slightest degree. It is clear that the jury were not at the time deliberating on their verdict when this remark was made, and, while the bailiffs should be enjoined by the court not to carry on conversations in the presence of the jury, still, when the verdict is attacked and is sought to be declared void, some taint therein must be shown. In the case of *Ned* v. *State*, 33 Miss. 364, some communications from outside persons were shown to have occurred with members of the jury, but it was further shown of what the communication consisted and that the same had no bearing or reference to the case then on trial.

In the instant case no undue influence is shown to have occurred which might reasonably be presumed to have had the slightest effect upon the verdict of the jury. This record does not disclose any sort of opportunity for improper influence to have been exerted on this jury or any member thereof.

From the standpoint of this court, this defendant has had an impartial trial at the hands of a fair and impartial jury, and we find no reversible error therein.

*Affirmed.*