## BARNETT v. STATE.*

(Division A.   May 9, 1927.)

[112 So. 586.   No. 26528.]

1. JURY. *Exclusion by court, of own motion, of juror who heard part of former trial held not reversible error (Hemingway's Code, section 2177).*

Exclusion by the court of its own motion, during the impaneling of the jury, of a juror who had been accepted by both state and defendant, on it appearing that he had been present and heard part of the former trial of the case, *held*, under Hemingway's Code, section 2177 (Code 1906, section 2685), not to constitute reversible error.

2. HOMICIDE. *One convicted of manslaughter may not complain of manslaughter instruction, where evidence would support verdict for murder.*

One convicted of manslaughter may not complain of giving of instruction on manslaughter, though the evidence was either of murder or self-defense, where it would support a verdict of guilty of murder.

*Corpus Juris-Cyc References: Homicide, 30CJ, p. 445, n. 32; Juries, 35CJ, p. 299, n. 36; p. 300, n. 40; p. 360, n. 28, 35.

APPEAL from circuit court of Lawrence county.
HON. J. Q. LANGSTON, Judge.

Byzer Barnett was convicted of manslaughter, and he appeals.   Affirmed.

*E. B. Patterson* and *C. E. Gibson,* for appellant.

I.   The manslaughter instruction should not have been given. This instruction was an invitation to the jury to compromise their opinions and convictions and find the defendant guilty of a lesser offense, which was manifestly unfair to him.   The doctrine laid down in the cases of *Calicoat* v. *State,* 95 So. 318; *Parker* v. *State,* 102 Miss.

113, 58 So. 978; *Rester* v. *State,* 110 Miss. 689, 70 So. 881; and other cases in accord with them should be followed.

II.   It was manifestly unfair to the defendant to excuse juror Fleet Morgan. Both sides had accepted him and passed on other jurors.   The record shows that he was not disqualified and was a competent juror.   After the defendant had passed on this juror along with the others, it was manifestly error to excuse the juror without any just or legal cause for so doing.   It is perfectly patent that the juror was excused without any cause.   See section 1254, chapter 172, Laws of 1908.

It will be noted that by section 2761, Code of 1871, it was provided:   "All peremptory challenges by the state shall be made before the juror is presented to the prisoner."   This section was construed in *Stewart* v. *State,* 50 Miss. 587, *et seq.,* wherein the case was reversed. The Stewart case has not been overruled, modified or distinguished, and has been the law since 1874.   This section on this point has been reenacted since the Code of 1871 and is now found in section 1254, Hemingway's Code, with the same provision on this point as when it was originally enacted.

Under chapter 172, Laws of 1908, this section was reenacted with full knowledge of construction by this court in the *Stewart case, supra,* and it must be conclusively presumed that the legislature was satisfied with such construction as no change was made in this section on this point.

The challenge of Fleet Morgan, juror, without any legal cause was virtually a peremptory challenge by the state and since he had been accepted by both sides, falls within the rules announced by the *Stewart case, supra.*

The juror was not incompetent for the reason that he said he had no opinion; but even if he said that he had an opinion, if he could make oath that he would disregard it, he would not be disqualified.   Section 2177, Hem-

ingway's Code; *Schwartz* v. *State,* 103 Miss. 711, 60 So. 732; *Howell* v. *State,* 107 Miss. 568, 65 So. 641.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

I.   Counsel for appellant contend that the testimony in this case shows conclusively that the defendant was guilty of murder or that he was not guilty. Even though we admit that this is true, appellant cannot complain of the granting of the manslaughter instruction. *Calicoat* v. *State,* 131 Miss. 169; *Strickland* v. *State,* 131 Miss. 169; *Stevenson* v. *State,* 136 Miss. 22; *White* v. *State,* 107 So. 755; *Houston* v. *State,* 105 Miss. 414; *Alexander* v. *State,* 110 So. 367.

II.   The court excused Fleet Morgan, juror, of its own motion without challenge by the state. The fact that this juror heard a part of the testimony on a former trial of this case would disqualify him. However, if we are mistaken in this, the defendant cannot complain.

There is no hint or suggestion in the record that appellant was not tried by a fair and impartial jury. This is all that is guaranteed to him by the constitution and laws of this state. *Smith* v. *State,* 103 Miss. 356; *Mabry* v. *State,* 71 Miss. 716; *Ferguson* v. *State,* 107 Miss. 559; *Steel* v. *State,* 76 Miss. 387; *Burrage* v. *State,* 101 Miss. 598.

COOK, J., delivered the opinion of the court.

The appellant, Byzer Barnett, was indicted and tried for murder, and was convicted of manslaughter, and sentenced to the penitentiary for five years, and from this conviction and sentence this appeal was prosecuted.

Charley Barnett, a brother of the appellant, who was jointly indicted with him, was employed as the agent for the Natchez, Columbia & Mobile Railroad Company, at

Jayess, in Lawrence county, and the duties of his employment included that of pumping water into a tank which supplied water to the locomotives of said railroad. Some time prior to April 22, 1925, Charley Barnett discovered that water was escaping from this tank in the nighttime and, conceiving that it was being let out by some one unlawfully, he watched the tank during the nighttime in an effort to locate and arrest the party molesting the water. After having watched the tank for a few nights, he secured the services of the appellant, who lived about three miles from Jayess, to watch the tank, and the appellant was so engaged on the night of the homicide.

The deceased, William Marshall Boyd, lived about one hundred fifty yards from this tank and had formerly been the agent of this railroad, charged with the maintenance of the water supply. Members of his family testified that about eight o'clock on the night of the homicide, he left his home for the purpose of going to an inclosure near the tank to see about a hog, and then going to the tank to take a bath; that he was unarmed when he left home, and his shotgun was then sitting in the corner of his bedroom; that a few minutes after he left the house they heard a gunshot and an outcry; that they immediately went to the scene of the shooting and found the deceased lying at the tank mortally wounded.

The deceased was shot with a shotgun, the load of shot taking effect in his back just above the left kidney, and ranging slightly upward and towards the spine. He lived about two hours and made a statement as to the facts of the shooting under circumstances which clearly rendered this statement admissible as a dying declaration. In substance, this statement was that when he reached the tank the appellant threw a gun upon him and ordered him to hold up his hands; that he put up his hands and said to the appellant, "I have got them up, boy, don't shoot me;" that the appellant then called to Charley Barnett, who lived only a few yards away, say-

ing, "I have got him, Charley;" that Charley replied, "Hold him until I get there;" and that thereupon the appellant shot him. Numerous witnesses testified to this dying declaration, all of them giving it, in substance, as above stated. There was also testimony by the wife and daughter of the deceased tending to prove that shortly after the shooting the appellant secured the deceased's shotgun and delivered it to Charley Barnett, who, in turn, placed it near the body of the deceased.

The appellant testified that the deceased approached the tank with a wrench in one hand and a shotgun in the other; that he laid the shotgun down near the tank and walked several steps to a cock in a pipe leading to the tank and proceeded to open it; that thereupon he (the appellant) ordered the deceased to throw up his hands; that he put up one hand and said, "I have got them up," and he (the appellant) replied, "You haven't," and then called his brother Charley, and thereupon the deceased turned and ran to his gun, and that he shot him as he stooped over to pick up the gun; that when he shot he did not know who the man was; and that he shot because he believed it was necessary to do so to save his own life.

During the impaneling of the jury and after a certain juror had been accepted by both the state and defendant, by a further examination of the juror, it was developed that this juror had been in the courtroom during a portion of a former trial of the cause and had heard the testimony of several witnesses. The juror stated that he had not formed or expressed any opinion as to the guilt or innocence of the defendant, but the court, of his own motion, excused the juror.

The appellant urges as grounds for a reversal, first, that it was error to excuse this juror after he had been accepted by both sides; second, that the granting to the state of an instruction submitting to the jury the issue of manslaughter was erroneous; and, third, that the testimony was not sufficient to support the verdict.

146 Miss.—57.

The action of the court below in excusing the juror in question did not constitute reversible error. Section 2685, Code of 1906 (section 2177, Hemingway's Code), expressly provides that "any juror shall be excluded, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error." A defendant has no vested right in any particular juror, but is only entitled to demand a fair and impartial jury, and there is nothing in this record to show or indicate that the appellant did not receive a trial by such a jury. When a doubt arises during the impaneling of a jury as to the competency or impartiality of a juror, it is the duty of the court to excuse such juror, and in view of the statute above quoted the action of the court in so doing cannot be assigned as error. It was so held by this court in the case of *Mabry* v. *State,* 71 Miss. 716, 14 So. 267, where it was said:

"If any doubt arose as to the competency of the juror, the court should have set him aside, as it had full power to do without error, at any time before evidence was submitted."

We do not think there is any merit in the contention that the testimony is insufficient to support the verdict. The testimony for the state, if believed, is amply sufficient to support a verdict of guilty of murder, while the testimony of the appellant, if believed, makes a case of self-defense. On this conflicting testimony the cause was properly submitted to the jury.

The appellant next contends that under the evidence he was either guilty of murder, or was justified in killing the deceased on the ground of self-defense, and consequently, since there was no element of manslaughter in the evidence, it was error to grant the state an instruction authorizing the jury to return a verdict of manslaughter.

Section 1233, Code of 1906 (section 963, Hemingway's Code), provides that "the killing of a human being without malice, by the act, procurement, or culpable negli-

gence of another, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to felony, or in the attempt to commit any crime or misdemeanor, where such killing would be murder at common law, shall be manslaughter," and in response to the contention that it was error to grant a manslaughter instruction, the state first contends that this issue was properly submitted for the reason that, under one view of the evidence, the jury would have been warranted in finding that the killing was done without malice, by the act or culpable negligence of the appellant, at a time when the deceased was engaged in the perpetration of a crime or misdemeanor, or in an attempt to commit a crime or misdemeanor.

It will not be necessary, however, for us to pass upon this contention since the doctrine is established in this state by numerous decisions that a defendant cannot complain of the giving of a manslaughter instruction on a trial for murder, where the evidence would sustain a verdict of guilty of murder, although there may be no elements of manslaughter involved in the evidence. *Huston* v. *State,* 105 Miss. 414, 62 So. 421; *Calicoat and Strickland* v. *State,* 131 Miss. 169, 95 So. 318; *Stevenson* v. *State,* 136 Miss. 22, 100 So. 525; *White* v. *State,* 142 Miss. 484, 107 So. 755.; *Alexander* v. *State,* 145 Miss. 675, 110 So. 367.

The judgment of the court below will therefore be affirmed.

*Affirmed.*