SANDERS *v.* STATE.[*]

(Division B. April 2, 1928.)

[116 So. 433. No. 27108.]

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 625, n. 29; p. 1077, n. 37; Rape, 33Cyc, p. 1496, n. 82; p. 1501, n. 11; As to competency of deaf-mutes as witnesses, see annotation in 9 A. L. R. 482; 28 R. C. L. 447; 3 R. C. L. Supp. 1575.

*John Horan*, for appellant.

*Rufus Creekmore*, Assistant Attorney-General, for the state.

ANDERSON, J. The appellant was indicted and convicted in the circuit court of Lafayette county, under section 1358, Code 1906 (section 1147, Hemingway's 1927 Code), of the rape of Jennie Lee McDowell, and sen-

tenced to the penitentiary for life. From that judgment, he prosecutes this appeal.

Appellant was a married man about thirty years of age at the time of the alleged crime. The prosecutrix, Jennie Lee McDowell, a deaf-mute, was twenty-three years of age at the time she claimed to have been raped by the appellant. She and the appellant had been acquainted for some time prior to June, 1925, during which month and year she claimed to have been raped by appellant. On the day of the alleged crime, the mother and father of appellant were away from their home in the field hoeing, and with them was appellant's wife. Appellant was supposed to be working at a sawmill in the neighborhood. The prosecutrix was at the home of her parents alone. She testified that about eight o'clock in the morning of the day she claimed appellant raped her, he came to her home armed with a pistol; that he proceeded to make an assault upon her; that she screamed one time, and attempted to scream again, but was prevented from doing so by appellant's choking her; that the appellant then threatened to shoot her with his pistol if she called for help, or if she told her parents what he had done; that he dragged her out of her home into the woods, where he kept her three hours; that during that time he had sexual intercourse with her five times, she resisting his assaults as best she could; and when appellant released her, she returned to her home. The mother of the prosecutrix testified that about eight o'clock on the morning of the alleged crime, she heard her daughter scream, but attached no significance to it at the time; that upon returning home, at noon, she found the prosecutrix lying across the bed crying; that upon being questioned, she said she was afraid to stay in the home alone; that the prosecutrix made no complaint to her at that time of having been raped by the appellant, but always appeared to be frightened when appellant was around her. The evidence showed that the prose-

cutrix did not tell her parents, or any one else, of the alleged crime until she became pregnant and had a miscarriage. Shortly after appellant's arrest, the prosecutrix's mother testified that she had a conversation with appellant, in which he laughed and said:

"I raped your daughter, but you will never be able to convict me, for I can take Bennie Lee Groves and a crowd from Water Valley and prove anything, and if you want to live and do well, you had better not appear against me."

Appellant testified as a witness in his own behalf. He denied ever having sexual intercourse with the prosecutrix, and attempted to establish an *alibi*, by his own testimony and that of other witnesses.

Appellant contends that the evidence was insufficient to support the verdict of the jury. It is true the testimony of the prosecutrix, upon which appellant's guilt or innocence so largely depends, has many elements of improbability. Notwithstanding, it cannot be said to be unbelievable. In many respects it is unreasonable, but not so unreasonable as to be impossible. We are of the opinion, therefore, that the evidence made an issue of fact for the determination of the jury.

The evidence in the case showed that the prosecutrix was a deaf-mute with little education, not being able to read writing with understanding. An interpreter, familiar with the sign language of the deaf-mute, was appointed by the court, and the prosecutrix gave her testimony in this manner: The interpreter conveyed to the witness, in sign language, the questions asked her by the attorneys representing the respective parties. She replied in sign language to the interpreter, who took down, in writing, her answers. Before giving her testimony, both she and the interpreter were properly sworn. Appellant objected to the testimony so given by the prosecutrix on the ground that it was hearsay. If deaf-mutes have sufficient understanding to comprehend

the facts about which they undertake to speak, and appreciate the sanctity of an oath, they may give evidence by signs, or through an interpreter, or in writing, and such testimony, through an interpreter, is not hearsay. *Bugg* v. *Houlka,* 122 Miss. 400, 84 So. 387, 9 A. L. R. 480. It appears from the record in this case that there was a compliance with these requirements.

Appellant assigns and argues, as error, the action of the court in refusing instructions numbered 5 and 6 requested on his behalf. By these instructions, appellant sought to have the court inform the jury that appellant could not be convicted on the uncorroborated testimony of the prosecutrix. Appellant was indicted under section 1358, Code 1906 (section 1147, Hemingway's 1927 Code), for forcibly ravishing the prosecutrix. A defendant may be indicted and convicted under that statute, on the uncorroborated testimony of the prosecutrix. This court has so held in *Monroe* v. *State,* 71 Miss. 196, 13 So. 884; *McArthur* v. *State,* 105 Miss. 398, 62 So. 417; *McLaurin* v. *State,* 129 Miss. 362, 92 So. 289. In discussing this question in the *McLaurin case, supra,* the court said:

"The appellant was indicted and convicted of forcibly ravishing the prosecutrix under the provisions of chapter 171, Laws of 1908 (Hemingway's Code, section 1092), and his counsel admits, as of course he must, that under the rule heretofore in force in this state a defendant may be convicted under this statute on the uncorroborated testimony of the injured female, but contends that, since chapter 171, Laws of 1914 (Hemingway's Code, sections 1093 and 1094), was enacted, which provides for the punishment of 'any male person who shall have carnal knowledge of an unmarried female person of previously chaste character younger than himself, and over twelve and under eighteen years of age,' etc., also provides that 'no person shall be convicted upon the uncorroborated testimony of the injured female,' the same rule should be applied to convictions under the former statute; but this

we are without the right to do, for each statute deals with a separate offense, and the second contains no provision with reference to the testimony necessary to support a conviction.''

There was no error, therefore, in refusing those instructions.

After his conviction, appellant made a motion for a new trial, based upon the alleged misconduct of the jury during the trial, which consisted of the following undisputed facts: On the evening of the trial, between six and seven o'clock, the jury, in charge of two bailiffs, left the courtroom for the purpose of going to supper. At the time the jury were leaving their room, one of the jurors, Wilson, was in the lavatory in the jury room. The other eleven jurors left Wilson in the lavatory and proceeded out of the courtroom downstairs. In a very short space of time, not more than a minute or so, Wilson, the juror, came out of the jury room into the courtroom and asked the circuit clerk where the jury had gone, and upon being told that they had gone downstairs, he followed them and caught up with them at the foot of the courthouse stairsteps. At the time he was passing through the courtroom to join the other jurors, there were only the circuit clerk, the janitor, and two or three other persons in the courtroom. He spoke to no one except the circuit clerk, and those in the courtroom were at a distance from ten to twelve feet from him. Appellant argues that such a separation of the jury vitiated their verdict, and entitled him to a new trial. The evidence showed that during the separation of the jury, the juror, Wilson, was not tampered with by any one, and, in addition, that there was no opportunity for any improper influence to be brought to bear upon him. The possibility that a jury has been exposed to outside influences is not sufficient to vitiate their verdict. We are of the opinion that no undue influence was shown to have occurred which might reasonably result in the slightest

effect upon the verdict of the jury. *Skates* v. *State,* 64 Miss. 644, 1 So. 843, 60 Am. Rep. 70; *White* v. *State,* 142 Miss. 484, 107 So. 755.

It follows that the court committed no error in overruling appellant's motion for a new trial.

*Affirmed.*