PROCEDURAL HISTORY
¶ 1. On July 30, 1998, Bobby Rice was indicted in the Winston County Circuit Court for aggravated assault, pursuant to Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2000). A jury convicted Rice of aggravated assault, and he was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections and ordered to pay restitution in the amount of $4,346.10 for the victim's hospital bill. Rice's motion for a judgment notwithstanding the verdict or in the alternative a new trial was denied. Feeling aggrieved, Rice has appealed to this Court asking for either a reversal of the jury's verdict or, alternatively, a new trial.
 FACTS
¶ 2. Bobby Rice lived with his "common law" wife,[1] Etherine Ingram, in Winston County, Mississippi. James Anderson, the victim in this case, is Ingram's nephew. On June 30, 1998, Anderson was at Ingram's home getting his hair styled when Rice came into the house, aimed a gun at Anderson and began shooting at him. As the others in the house rushed to get away, Anderson escaped through a bathroom window. Rice later turned himself in to the police, and the next day told the police that he shot Anderson in self-defense because Anderson had previously threatened Rice's life. Testimony from several witnesses contradicted Rice's theory of self-defense.
 ANALYSIS OF THE ISSUES PRESENTED STANDARD OF REVIEW
¶ 3. Bobby Rice only cites one issue for our review: whether the weight of the evidence supported the verdict. However, looking further he actually also argues that the sufficiency of the evidence did not support his verdict.
¶ 4. First, looking to the weight of the evidence, a motion for new trial deals with the weight of the evidence:
 Matters regarding the weight and credibility of the evidence are to be resolved by the jury. . . .
 Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of *Page 173 
the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion. . . .
McClain v. State, 625 So.2d 774, 778-81 (Miss. 1993) (citations omitted).
¶ 5. A motion for JNOV deals with sufficiency of the evidence. Our standard of review concerning the trial court's denial of JNOV is also described in McClain:
 In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. . . . We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain, 625 So.2d at 778 (citations omitted).
 DISCUSSION OF THE ISSUES
¶ 6. Looking first to the weight of the evidence and to Rice's motion for new trial, it is clear that the trial judge's overruling this motion was not an abuse of discretion as to produce an unconscionable injustice. Rice's motion is a one page document that provides no facts whatsoever in support of his argument, only stating in a single sentence that the jury's verdict is against the weight and sufficiency of the evidence. Since Rice made no argument with this motion, the trial judge was without recourse to grant such motion. Thus, Rice's challenge to the weight of the evidence is without merit, and the motion was rightly denied.
¶ 7. Next, looking to the sufficiency of the evidence, Rice claims that no evidence was presented showing he had any intent to harm Anderson. Rice further claims that he shot Anderson in self-defense, since Anderson also had a gun and shot back at him. Looking to the evidence, Rice's recollection of the event and the testimonies of witnesses who were present are starkly contradictory. Every person who testified, except for Rice himself, said that Rice was unprovoked when he drew a gun and began shooting at Anderson, and that Rice was the initial aggressor.
¶ 8. Patricia Bogan testified that she was styling Anderson's hair at the time he was shot. Bogan recalled that Rice came in from the back of the house and told Anderson to get out. At that point, Bogan testified that Anderson may have reached for Rice's gun, trying to knock it from Rice's hand. Rice then shot Anderson twice, and Bogan fled the house after she saw Rice fire the first shot. Bogan testified that at no time before this incident had she ever seen Anderson assault, threaten or provoke Rice in any way.
¶ 9. Janette Triplett, Anderson's girlfriend, was also present at Ingram's home the evening Anderson was shot. Triplett testified that Rice aimed the gun at Anderson, Anderson tried to push it away, then Rice shot Anderson in the side, then in the mouth.
¶ 10. Gary Clark, an investigator with the Winston County Sheriff's Department, investigated the shooting incident at Ingram's house. Clark testified that Anderson told him that Rice had shot him. Clark also attested that Anderson indeed had gunshot wounds in his side and in his mouth, and that Rice confessed to him of the shooting and told him where the gun was hidden. *Page 174 
¶ 11. James Anderson, the victim, testified that while he was getting his hair done, he heard Rice and Ingram arguing. When Rice's young son told Anderson that his father was acting crazy, Anderson assured the boy that as soon as his hair was done he and the boy would leave. Then, Rice came from the back of the room where Anderson was, aimed the gun at Anderson and shot him. Anderson testified that he was not armed that day and had not previously threatened Rice.
¶ 12. Christopher Rice, Ingram and Rice's son, was eleven years old at the time of the trial. Christopher testified in his own words that "his daddy" shot Anderson and that Anderson was not doing anything to "his daddy" at the time "his daddy" shot Anderson.
¶ 13. Etherine Ingram, Rice's wife,[2] testified that she had gone to bed that night and that Rice came into the bedroom to ask her to tell Anderson to leave, which she refused to do stating that Anderson was her nephew and Anderson could stay if he wanted to. Ingram said Rice got her gun from under the bed and then left the bedroom, went to the kitchen and then shot Anderson.
¶ 14. Bobby Rice, the appellant, testified that he knew Anderson before this incident, that Anderson had previously threatened his life, and that he had never seen Anderson previously when he was not armed. Rice claims that earlier that evening Anderson had pulled a gun on him and that is why Rice pulled his gun on Anderson. Rice claimed that a struggle for the guns ensued and Anderson was accidentally shot.
¶ 15. Reviewing all the testimonies in this case, all of the witnesses seem to have the same story, except for Rice himself. No one else even said that they saw Anderson with a gun. The testimony was that Anderson had his shirt off and was having his hair styled. Thus, he was not able to hide a weapon on his person except for in his pants, where it would certainly be in view of at least one of the witnesses. The evidence plainly does not contradict the jury's finding.
¶ 16. In another vein, Rice makes a self-defense argument, claiming that Anderson's verbal threats on him were enough to require that Rice defend himself. However, the supreme court has said that verbal threats alone are not enough to provoke one to defend himself.
 To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent [sic] danger of such design being accomplished. On the other hand, if a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor and deprives himself of the right of self-defense.
Anderson v. State, 571 So.2d 961, 963 (Miss. 1990) (citations omitted). Rice was armed, and he admitted that Anderson had threatened him before. Thus, Rice can be said to have been "arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary."Id. This self-defense theory is not reasonable.
¶ 17. Rice also alleges that the State failed to prove every element of the crime with which he was charged. If we review *Page 175 
the statute, we find that the State had to prove the following:
 (2) A person is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years.
Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2000). As described previously, the State did prove that Rice purposely caused bodily injury to Rice with a deadly weapon, a gun. Taking the evidence in the light most favorable to the State, the jury's verdict was the correct one in light of the facts and testimonies presented.
 CONCLUSION
¶ 18. Finding no error with the trial judge's decision to deny Rice's motion for judgment notwithstanding the verdict or in the alternative a new trial, we affirm.
¶ 19. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT OFCONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS AND FIVEYEARS POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPIDEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND ORDER TO PAYRESTITUTION IN THE AMOUNT OF $4,346.10 IS AFFIRMED. COSTS OF THIS APPEALARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, IRVING, LEE,MYERS, AND THOMAS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.
[1] We recognize that pursuant to Miss. Code Ann. § 93-1-15 (Rev. 1994), Mississippi does not recognize this type of marital union; however, we use this wording only to reflect the appellant's description of his approximate fifteen-year relationship with Ms. Ingram.
[2] See footnote 1.