453 So.2d 1290 (1984)
James MURPHY, Jr.
v.
STATE of Mississippi.
No. 54318.
Supreme Court of Mississippi.
August 15, 1984.
*1291 Thomas Morris, Ellis Turnage, Morris & Turnage, Cleveland, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
James Murphy, Jr. was convicted of the capital murder of Coralie Staples in the Circuit Court of the Second Judicial District of Bolivar County, and, the jury being unable to agree upon punishment, he was sentenced to life imprisonment in the custody of the Department of Corrections. He appeals.

CHANGE OF VENUE
Murphy's first assignment of error is that the trial judge abused his discretion when he did not grant a change of venue from Bolivar County to another county *1292 rather than simply moving the trial from the First District seated at Rosedale to the Second District, seated at Cleveland.
The murder for which Murphy stands convicted occurred in Rosedale. Murphy's initial attorneys filed a motion for change of venue. Five days later these attorneys filed a motion for change of trial site from the First District to the Second District. That same day Murphy, his attorneys and the District Attorney signed and presented to the trial judge an "agreed order" transferring the trial site to Cleveland. This "agreed order" was signed by the judge and the trial site was moved. By the terms of this order, it was agreed that the prior motion for change of venue was fully satisfied.
Murphy's present attorneys filed another motion for change of venue on November 10, 1981, supported by identical affidavits sworn to by Murphy and four others. An extensive voir dire was conducted on the pretrial publicity and only one venireman stated that she had formed an opinion that could not be changed. When the motion to change venue was then renewed, it was denied.
The test for a change of venue is whether or not the accused can get a fair trial. Myers v. State, 268 So.2d 353, 359 (Miss. 1972). The very purpose of our system of justice is to ensure that event. Someone must make the initial determination of whether or not a change of venue is required to ensure the accused a fair trial and, under our law, that decision is a matter vested largely within the sound discretion of the trial judge. Daumer v. State, 381 So.2d 1014 (Miss. 1980). We will disturb that determination only upon an abuse of discretion that serves to deny the accused his right to a fair trial.
Murphy asserts that the trial court abused its discretion in denying his second motion to change venue during the empaneling stage of trial. Where the denial of change of venue under review occurs after the jury is empaneled, the Supreme Court will consider in evaluating the denial for abuse of discretion the voir dire examination of the prospective jurors, the result of the effort to obtain a trial jury, and the evidence on the merits of the case. Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944). If, as here, a fair portion of the jurors examined can give the accused a fair trial, the judicial discretion of the trial judge will not be disturbed. Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961). The trial judge reserved ruling upon the motion until the completion of the voir dire to determine if a fair and unbiased jury could be obtained, and, being convinced by the totality of the voir dire that the jury in this case was unbiased, he denied the change of venue. This procedure allowed the trial judge to view the prospective jurors, watch their demeanor, and determine if a fair trial could be obtained before them. On these facts we certainly are unable to say that it clearly appears that the judge abused his discretion. Gilliard v. State, 446 So.2d 590 (Miss. 1984); Parks v. State, 267 So.2d 302 (Miss. 1972); and Wilcher v. State, 448 So.2d 927 (Miss. 1984). This assignment is without merit.

RESTRICTED CROSS-EXAMINATION
Murphy contends that his right to cross-examine state witness Annette Chapman was limited and restricted. The right to confront and cross-examine the witnesses for the state is fundamental and cannot be substantially restricted. Myers v. State, 296 So.2d 695 (Miss. 1974); Valentine v. State, 396 So.2d 15 (Miss. 1981). However, the accused can decline to cross-examine the witness and no abridgement of his rights takes place. Crapps v. State, 221 So.2d 722 (Miss. 1969).
Chapman was called by the state to testify about Murphy's presence in Memphis and her testimony was a link in the chain of circumstantial evidence against Murphy. Murphy, at the time of this trial, was under indictment in Tennessee for the rape of this witness. Chapman had made an erroneous identification in Tennessee of Murphy. An extensive voir dire of Chapman was conducted to determine that she would give no *1293 inference to the jury that Murphy might be involved in some other crime. The trial judge admonished counsel that it was up to them to frame their questions in such a way as to avoid eliciting the rape incident from the witness.
The state had the right to use Chapman even though in doing so they faced the danger of creating reversible error. When Chapman did not allude to any other alleged crime, the defense had a tactical choice to make  to cross or not to cross. If the defense chose to cross-examine, then they faced the danger of opening the door to the alleged rape. If the defense declined to cross-examine, they were assured that there was no possibility of mentioning any other alleged crime by Murphy. The defense elected not to cross-examine. There is no merit to this assignment of error.

HEARSAY
Did the trial court err in allowing the state to elicit hearsay evidence from Isaac Liner, a prosecution witness? The state contends that no error occurred because the accused did not make timely objection and for the additional reason that the accused opened the door to this line of questioning by the state. The state had called Liner to testify about a meeting with Murphy and one Clifford Graham after the killing. Defense counsel asked two questions on cross-examination as follows:
Q. He (Clifford Graham) was talking as if it was his gun, wasn't he?
A. Well, yeah. Um, hum.
.....
Q. That was before the police ever contacted you?
A. Yes... . .
The state contends that these two questions "opened the door" for the hearsay testimony elicited on redirect examination. The state asked questions to develop what Liner had admitted on cross-examination:
Q. What did Clifford Graham tell you about the gun?
A. Well, we was walking the street... . He was trying to tell me what had happened and he said something about he was  well, standing in Rosedale. He was standing on the 
(By defense counsel): Your Honor, I object to this.
(By the State): He's opened it up, Your Honor. We've got the cases.
(By the Court): ... Yes, sir, you opened it. You asked him what he said, sir.
After a brief conference at the bench, the state continued to ask Liner what Graham had told him about the defendant.
Q. Did he (Graham) indicate to you why he was afraid "Baby" James (the defendant) might off (kill) him . ..
A. Well, he didn't really altogether say what but he just said, um, about what happened.
(By defense counsel): Your Honor, we are going to object to this kind of testimony.
(By the Court): Overruled.
(By the state): Go right ahead, Mr. Liner. The Court has said that it's okay for you to tell what Clifford Graham said now.
Liner was then allowed to tell the jury what Graham had told him about how the crime occurred. Graham never took the stand. The state also contends that this testimony was admissible under the conspiracy exception to the hearsay rule.
The contention that the testimony was improperly or untimely objected to is without merit. Defense counsel promptly objected. Conceding that he did not state his grounds of objection, it is obvious from the response of the prosecutor and the ruling of the trial judge, as well as the totality of the setting in which these objections were interposed, that everyone clearly understood that the objection was based upon the hearsay rule. There simply can be no doubt of that. In such circumstances it would be vain and foolish to demand that in the heated flow of trial, where the grounds of the objection are reasonably apparent from the context, that counsel state his grounds or waive his objection.
*1294 It is true that where hearsay evidence is not properly objected to it may be considered by the jury for whatever probative value it may have. Young v. State, 425 So.2d 1022 (Miss. 1983); Sanders v. State, 260 So.2d 466 (Miss. 1972); Pepper v. State, 200 Miss. 891, 27 So.2d 842 (1946). However, in those three cases no objection was made at the time the evidence was offered upon any ground. In fact, no objection was ever made at trial in Sanders and Pepper. We conclude that the objections here were proper and timely made and should have been sustained.
We reject both the conspiracy exception and scope of examination theory of admissibility offered by the state. There is no hearsay exception based upon the scope of examination. You may allow its admission by failing to object to it, but you simply cannot "open the door" to hearsay. Hearsay is incompetent evidence. You may open the door for collateral, irrelevant, or otherwise damaging evidence to come in on cross-examination, Reddix v. State, 381 So.2d 999 (Miss. 1980); Jefferson v. State, 386 So.2d 200 (Miss. 1980); Sanders v. State, 219 So.2d 913 (Miss. 1969), but Mississippi recognizes no rule of law that allows double hearsay to be brought in through this open door.
The jury was presented with what Liner said Graham told him about what Murphy, the accused, said. This double hearsay is incompetent unless each link in the chain fits under some exception to the hearsay rule. This is not a statement made by one co-conspirator to another, nor is it an admission by a party. Liner was not in the presence of Murphy when these statements were made. The statements were not spontaneous at the time of the act. Nothing assures the truthfulness of the matters asserted. This testimony just does not fit any valid exception to the rule against hearsay.
The state cannot sit silent while the defense elicits hearsay and then seek to solicit hearsay in response over the objection of the defense, based upon the state's initial failure to object. "Sauce for the goose, sauce for the gander" does not apply in this situation. To allow this is tantamount to allowing two wrongs in the hope of arriving at a right.
Allowing Liner's hearsay over defense objection violated Murphy's right to a fair trial and is reversible error. This particular hearsay purported to reveal eyewitness testimony of the crime, which testimony in itself would have been enough to convict the accused. For this reason the case must be reversed and remanded to the trial court for a new trial.
There is no merit to the remaining assignments of error nor is it necessary for this Court to reach them based upon our determination that this case must be reversed and remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., not participating.