911 So.2d 614 (2005)
Sidney A. HUGGINS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00132-COA.
Court of Appeals of Mississippi.
September 13, 2005.
*615 Nathan Henry Elmore, Jackson, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before BRIDGES, P.J., MYERS and CHANDLER, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Charged with the murder of Jermaine M. Knight, Sidney Huggins went before the Hinds County Circuit Court, where his first trial ended in a mistrial. After his second trial, the jury found Huggins guilty of manslaughter. The circuit court sentenced Huggins to a twenty-year term in the custody of the Mississippi Department of Corrections. Huggins appeals and advances two contentions, listed verbatim:
I. That the trial court erred in not allowing [Huggins] to question the State's forensic pathologist on the effects of large amounts of alcohol on a person's propensity to aggressive behavior and not allowing [Huggins] to argue the same to the jury in summation.

*616 II. That the trial court erred in over-ruling [Huggins's] objections to the State's attempts to shift the burden of proof to [Huggins] and [it is] improper for him to prove his own innocence.
Finding no error, we affirm.

FACTS
¶ 2. Jermaine Knight, then twenty-one years old, died from gunshot wounds in the early morning hours of April 15, 2001. The events that set Knight's death into motion began at a nightclub called "It's All Good" in Jackson, Mississippi. Between midnight and 1:00 a.m., Marcus Sheriff and Sidney Huggins arrived at the nightclub. Certain testimony indicated that Knight "cursed" Huggins, then sixteen-years old, and told him to turn down the stereo in his blue Chevrolet Caprice. Knight and Huggins "locked up" but others at the scene broke up the fight. When Huggins and Sheriff went to leave, Knight reached into the Caprice, pulled the keys out of the ignition, and threw the car keys onto the roof of the nightclub, but the Caprice kept running. Witness testimony detailed that Sheriff and Huggins left, drove past the nightclub, and screamed something as they drove away. Ten or fifteen minutes later, Sheriff and Huggins returned to retrieve Huggins' keys from the roof of the nightclub.
¶ 3. Huggins stayed in the car while Sheriff retrieved the car keys. According to his testimony, Huggins reached under the car seat and retrieved a pistol that belonged to Sheriff. Huggins set the pistol on the seat next to him. Sheriff's testimony indicated that Knight approached the passenger side of the car after approximately thirty seconds. Huggins testified that Knight leaned into the passenger-side window, "cursed" him and threatened him for approximately forty-five seconds, and then reached into the window to hit Huggins. Huggins testified that he was afraid Knight was reaching for the pistol sitting on the car seat. Huggins also testified that he and Knight wrestled for the pistol before the first shot "went off." Knight's body went limp after the first shot, and he collapsed into the window with his upper body draped across the door. According to Huggins, he still felt threatened, so he shot Knight two more times. Knight eventually fell out of the window. Huggins testified that he stopped shooting after Knight fell out of the window. However, other eyewitness testimony indicated that Huggins kept firing even after Knight lay on the ground. That dispute notwithstanding, the evidence demonstrated that Huggins shot Knight multiple times.
At least two of those shots were fatal. One bullet, most likely the first shot, went through Knight's chin and severed his spinal cord. Another bullet went into the left upper portion of Knight's back. That bullet passed through both lungs, the aorta, the esophagus, and fractured a rib before it exited Knight's body. Knight lost nearly four quarts of blood that collected in his chest cavity. A third bullet passed through two pelvic bones, though that was not a lethal wound. Afterwards, the blue Caprice backed up and left the scene. Two of Knight's friends attempted to get medical attention for Knight but he died on the way to the hospital.

ANALYSIS

I. Did the trial court err in refusing to allow Huggins to question the State's forensic pathologist on the effects of large amounts of alcohol on a person's propensity to aggressive behavior and refusing to allow Huggins to make that argument during his summation?
¶ 4. Huggins argues that the trial court unfairly limited his ability to put *617 forth his theory of the case. Huggins's argument stems from two of the trial court's decisions. The first decision came as a result of Huggins's cross-examination of Dr. Steven Hayne, a forensic pathologist. The second decision involves the trial court's limitation of Huggins's summation. We address them in turn. However, we must be mindful of our standard of review under the circumstances. "The standard of review of an admission or exclusion of evidence is abuse of discretion." Smith v. State, 839 So.2d 489(¶ 17) (Miss. 2003).
¶ 5. Dr. Hayne testified during the State's case-in-chief. After the State rested, Huggins called Dr. Hayne during his case-in-chief. When Huggins questioned Dr. Hayne about Knight's blood alcohol content, the trial court issued the following cautionary statement to the jury:
As I have told you earlier, sometimes I allow you to consider certain evidence for limited purposes but not other purposes. This is one of those occasions, so I have an instruction I am going to give to you now.
You may consider any evidence of the deceased's blood alcohol level as you may find, if at all, that it relates to or explains the deceased's state of mind and his thought processes at the time of or just prior to being allegedly shot by the defendant. You may not, however, consider such evidence in determining whether or not the deceased Jermaine Knight was the immediate provoker or aggressor at that time because alcohol levels affect different people in different ways, and there has been no evidence presented to you as to how increased alcohol levels normally affected the deceased in this case, Jermaine Knight.
¶ 6. On appeal, Huggins claims that the trial court's refusal to allow Huggins to elicit testimony from Dr. Hayne regarding the possible effects of a blood alcohol reading of .26, which was Knight's blood alcohol content at the time of his death, on a person's propensity to be argumentative, disagreeable or even violent was an unfair limitation on his ability to present his defense. While acknowledging that Dr. Hayne testified that a blood alcohol level of .26 percent would effect significant changes in personality, Huggins argues that he was not allowed to explore whether these significant changes in personality could include making a person more aggressive. Huggins offers the example that he could not question Dr. Hayne regarding how high levels of alcohol might make one more prone to argue, take offense, or push a grievance, as well as any increased likelihood to resolve disputes with violence.
¶ 7. As for his claim regarding his summation, the source of Huggins's complaint stems from the trial court's statement that, "you (Huggins) are not going to be allowed to argue to the jury that because of the intoxication level of Jermaine Knight, that he was acting more aggressive than he normally would." Huggins claims that this decision made it impossible for him to argue his case for self-defense based on the fact that he was confronted by a larger person, who "was drunk beyond reason" and was attacking Huggins. Further, Huggins claims that it was impossible for him to express his theory of the case without linking Knight's violent conduct to Knight's excessive consumption of alcohol. Though Huggins does not cite any rule of evidence, nor does he claim that the trial court abused its discretion in applying a particular rule of evidence, Huggins claims that the trial court's decision to forbid exploration of his theory results in reversible error.
¶ 8. We disagree. "Demonstrating that the victim of an alleged assault was a violent person such that the defendant would have good cause to defend himself is *618 . . . covered by Rule 404(a)(2)." McNair v. State, 814 So.2d 153(¶ 6) (Miss.Ct.App. 2001). Generally, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." M.R.E. 404(a). However, there are exceptions to that general rule. According to Rule 404(a)(2), the following evidence is admissible:
Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor.
M.R.E. 404(a)(2).
¶ 9. Huggins did not put forth any evidence suggesting that it was within Knight's character to behave violently, whether drunk or sober. That is, Huggins put forth ample evidence that Knight acted violently towards Huggins on the night in question, but Huggins did not submit any evidence that Knight was prone to act violently when drunk at any time other than the night that Knight died.
¶ 10. The trial court correctly articulated its concern that the evidence in question would not be useful unless Huggins laid a predicate showing how increased alcohol levels normally affected Knight. The trial court refused to let Huggins explore this line of questioning because there was no predicate for whether Jermaine Knight, the victim, was more aggressive when he consumed large amounts of alcohol. Still, Dr. Hayne testified that a person with a high level of alcohol would experience "significant changes in personality, in cognitive or reasoning ability."
¶ 11. Further, Huggins theory was self-defense, and it is irrelevant as to why Huggins may have felt the need to defend himself. Rather, what is relevant is that Huggins said he was afraid Knight would kill him. Huggins put that concept into evidence, so Huggins was not prejudiced by the trial court's restriction.
¶ 12. Lack of prejudice notwithstanding, any demonstration of Knight's tendency to behave violently when drunk can only be relevant to Huggins's self-defense claim if Huggins was aware of that tendency.
In order to be relevant in a claim of self-defense, the victim's nature as a potential aggressor must not only be demonstrated, but it must also be shown that the defendant was aware of that nature, since only that combination of facts affects the reasonableness of the defendant's alleged fear of harm at the victim's hands  which is a relevant source of inquiry by the jury in assessing a claim of self-defense.
McNair, 814 So.2d at (¶ 7) (citing Rice v. State, 782 So.2d 171(¶ 16) (Miss.Ct.App. 2001)). Accordingly, we find no abuse of discretion in the circuit court's decision.

II. Did the trial court err in overruling Huggins's objections to the State's line of questioning regarding the presence or lack of photographs corroborating Huggins's version of events?
¶ 13. During cross-examination of Huggins, the State asked him if he had pictures that corroborated his version of the events. That is, the State asked Huggins if he had pictures of his face after Knight allegedly struck him and if Huggins had pictures of his car with blood inside the passenger side door. Huggins did not.
¶ 14. On appeal, Huggins argues that the State's line of questioning was an attempt to shift the burden on him and *619 force him to prove his own innocence. Huggins admits that reversible error may arise where the State comments on a defendant's failure to testify, but "it is not error to comment on the defense's failure to offer any evidence whatsoever to counter or explain the state's evidence." Lee v. State, 435 So.2d 674, 678 (Miss.1983). Further, Huggins acknowledges that it is not improper for the State to argue in closing that a defendant's case is inadequate. Hobson v. State, 730 So.2d 20(¶ 27) (Miss.1998). Huggins attempts to distinguish the scenario and claims that the State's inquiry as to the existence of photographs of Huggins's face and the interior of his car made the jury conclude that Huggins was obligated to provide photographic evidence of his assertions.
¶ 15. This Court will not reverse a conviction unless we are convinced that the remark contributed to the verdict. Green v. State, 887 So.2d 840(¶ 8) (Miss.Ct.App. 2004) (citing King v. State, 788 So.2d 93(¶ 16) (Miss.Ct.App.2001)). The trial judge adequately instructed the jury regarding the State's burden of proof. The circuit court instructed the jury that every person is presumed innocent, and the State had the burden of proving every element beyond a reasonable doubt. Further, the circuit court instructed the jury that Huggins was not required to prove his innocence. The State's inquiry during cross-examination of Huggins as to the existence of photographs did not shift the burden of proof, and this Court is not convinced that the questions contributed to the verdict.
¶ 16. THE JUDGMENT OF THE FIRST JUDICIAL DISTRICT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.