981 So.2d 314 (2007)
Daron J. ROUSTER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00451-COA.
Court of Appeals of Mississippi.
November 20, 2007.
Rehearing Denied April 15, 2008.
*315 Shaun Eren Yurtkuran, Jackson, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. After a trial in the Circuit Court of the First Judicial District of Hinds County, a jury found Daron Rouster guilty of the charge of murder and two charges of aggravated assault. Rouster was sentenced to life imprisonment for the murder charge and twenty years for each aggravated assault charge, to be served consecutively. Rouster now appeals, raising one issue: whether the trial court abused its discretion in excluding testimony about whether the two victims of aggravated assault were intoxicated. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of February 16, 2005, Rouster was at the apartment of his girlfriend, Rhonda Brown, in Jackson, Mississippi. Other people present and residing in the three bedroom apartment were Rhonda's two children (one toddler and one infant), both fathered by Rouster, and Rhonda's two brothers, Christopher and Corderries, who were sixteen and twenty years old at the time. Rouster and Rhonda had been in a relationship for about three years, and Rouster was a frequent overnight guest of Rhonda's at the apartment. Testimony conflicts about whether Rouster had spent the night the evening before, but regardless, it is undisputed an altercation ensued that morning between Rouster and Rhonda in her bedroom. Christopher and Corderries, who were playing video games in the living room, heard Rhonda scream for help. While testimony also conflicts about what happened next, the following tragic facts are undisputed: Christopher was shot in the arm; Corderries was shot three times resulting in paralysis from the waist down; Rhonda was stabbed twice and received three gunshot wounds, two of which were lethal shots to her head; and Rouster sustained multiple stab wounds and non-fatal gunshot wounds to his hand and throat. All shell casings and projectiles found at the scene, totaling approximately seventeen, were found to have come from a nine millimeter weapon.
¶ 3. At trial, Corderries, Christopher, the apartment manager, and two Jackson police officers testified for the State, as well as a Mississippi Crime Lab firearms expert and the State's chief forensic pathologist, Dr. Stephen Hayne, who performed Rhonda's autopsy. Corderries and Christopher claim that after they heard Rhonda scream for help they went to assist *316 her, at which point Rouster pointed a Tech-9 semi-automatic machine gun at their faces. Corderries maintains that Rouster put a clip in the gun and shot at Christopher, who ran past Rouster trying to get out of the apartment. Corderries tried to run to Rhonda but was shot several times and paralyzed instantly from the waist down. Corderries testified he then saw Rouster shoot Rhonda in the head at close range as she was sitting on her bed. Christopher testified he managed to leave the apartment to get help at a nearby apartment. Corrderries stated that Rouster left the room where Corderries and his lifeless sister were. Rouster returned with a kitchen knife, sat on the bed, and started slashing his own chest and wrists. The apartment manager testified she had been to the apartment briefly on the same day before this incident occurred to take renovation photographs, at which time everything had seemed fine. Later, however, from her office window she saw Rouster drop to his knees in the apartment's parking lot and attempt to shoot himself in the head with a Tech-9 machine gun.
¶ 4. The police officers who responded to the scene found a Tech-9 weapon in a grassy area near the parking lot. They followed drippings of blood up the stairs to Rhonda's apartment where they found Rouster on a bed groaning, slashing his wrist with a knife. The officer stated Rouster ignored several verbal commands to put down the knife. Corderries, who was lying in a corner of the bedroom, called out to the officer for help and stated that his sister was nearby dead. While waiting for medical assistance to arrive and keeping visual contact on Rouster, the officer stated that Rouster crawled to the bathroom, filled the bathtub with water, and got in it.
¶ 5. The State's forensic pathologist expert, Dr. Stephen Hayne, testified that the trajectories in Rhonda's three gunshot wounds indicated they had been inflicted from above her. Also, her stab wounds were indicative of a defensive posture. He deemed Rhonda's manner of death a homicide.
¶ 6. Rouster, who was unable to speak because of a gunshot wound to his throat, recounted the following version of events by writing during his examination. He claimed that he had spent the night with Rhonda. That morning, she started an argument with him when he tried to leave, accusing him of leaving to visit another girlfriend. Rouster testified that Rhonda got mad and stabbed him with a knife in the chest and called her brothers for help. Christopher and Corderries would not let Rouster leave, so he reached under the mattress and retrieved a Tech-9 machine gun. Rouster testified that, while fighting over the gun, Corderries, Christopher and Rhonda were all shot. Rouster also claims Rhonda tried to cut his penis off with the knife. Rouster denied shooting or stabbing Rhonda. Rouster admitted he drew a bath because he said he was burning from his wounds. Rouster did not remember shooting himself under the chin in the parking lot.
¶ 7. At issue in this appeal is the cross-examination of Corderries during the State's case-in-chief, when Rouster's defense attorney asked him if he and his brother had been smoking marijuana before the shooting ensued. The district attorney objected as to relevance, and ultimately, the trial judge sustained the objection. The colloquy was as follows:
MR. SMITH [Attorney for Rouster]:
Were you all smoking marijuana?
MR. DOLEAC [Assistant District Attorney]:
Objection, your Honor, to relevance.
THE COURT: Mr. Smith, you and Mr. Doleac approach the bench.

*317 (BENCH CONFERENCE OUTSIDE THE HEARING OF THE JURY:)
THE COURT: What are you doing?
MR. SMITH: Well, based on my investigating and the information that I am getting from Mr. Rouster he wants me to ask questions based on what he says happened in that apartment.
THE COURT: Assuming the answer is yes, that they were, what's the probative value?
MR. SMITH: I think it goes to state of mind and credibility.
THE COURT: All right. In what way would it affect credibility?
MR. SMITH: If they were able to show propensity to 
. . . .
(JURY EXCUSED FROM THE COURTROOM. THE FOLLOWING PROCEEDINGS OCCURRED OUTSIDE OF THEIR PRESENCE.)
THE COURT: All right. At the bench, Mr. Smith, you indicated that you felt the testimony would affect the credibility of the witness.
MR. SMITH: That's correct, your Honor.
THE COURT: I need you to tell me how it would do so.
MR. SMITH: We believe, your Honor, that if it's  if the jury believes that Mr. Brown was using marijuana that could have had a propensity for violence. Earlier Mr. Brown testified that when the gun was pointed into his face that they basically stood there when it was two inches in front of their face. We believe based on Mr. Rouster's version that there was a fight and that if they had been smoking marijuana that that probably would be the likely result.
THE COURT: All right. Well, do you have any evidence or authority that someone smoking marijuana is at an increased risk or level or propensity for violence?
MR. SMITH: Not in this trial I do not have any evidence to that effect.
THE COURT: All right. Well, it would seem to me that marijuana, as alcohol, affects different people in different ways. I have known people that becoming intoxicated they get meaner. I have known people that get intoxicated, but, you know, they mellow out. So unless you have got some kind of other evidence to tie it in, I don't think that the threshold of establishing the probative value for the purpose that you have indicated has been met. And I certainly think that even if relevant  and I am finding, first of all, that for the reasons stated that it is not relevant at this point as it has no probative value. But even if it did have some that it would be outweighed by undue prejudice and confusion of the issue by the jury. So it would be  the objection is sustained under Rule 401 as  401, 402 and 403 of the Mississippi Rules of Evidence.
¶ 8. After a three-day trial, the jury convicted Rouster of all three criminal counts. The trial judge sentenced Rouster to life imprisonment for the murder of Rhonda Brown and to a twenty-year term for each of the two counts of aggravated assault towards Christopher and Corderries Brown, to run consecutively. Rouster now appeals.

STANDARD OF REVIEW
¶ 9. The standard of review for the trial court's admission or exclusion of evidence is an abuse of discretion. Muscolino v. State, 803 So.2d 1240, 1244(¶ 16) (Miss.Ct.App.2002). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, *318 and `unless this judicial discretion is so abused as to be prejudicial to the accused,' then the ruling of the lower court must be affirmed." Francis v. State, 791 So.2d 904, 907(¶ 7) (Miss.Ct.App.2001) (quoting Graves v. State, 492 So.2d 562, 565 (Miss. 1986)).

DISCUSSION
¶ 10. Rouster argues that the trial court erred in excluding testimony about whether the two victims of aggravated assault, Corderries and Christopher, were smoking marijuana at the time of the incident. Rouster claims this entire line of questioning went to his theory of self-defense for the murder and aggravated assault charges. In limiting his ability to confront Corderries fully, Rouster argues the trial judge infringed upon his Sixth Amendment right to confrontation.
¶ 11. We disagree. Generally, the Sixth Amendment constitutional right of a defendant to confront and cross-examine the witnesses against him "is fundamental and cannot be substantially restricted." Hewlett v. State, 607 So.2d 1097, 1100 (Miss.1992) (citing Murphy v. State, 453 So.2d 1290, 1292 (Miss.1984)). However, this right of confrontation is not limitless. Id. While the scope of cross-examination is usually broad, the trial judge retains the inherent power and discretion to limit cross-examination to relevant matters. Id. Further, we keep in mind our standard of review is whether, in excluding the testimony at issue, the trial judge abused his discretion and prejudiced the accused. We find he did not.
¶ 12. Rouster presented no evidence that smoking marijuana increases a person's propensity for violence generally. Nor did Rouster present any evidence suggesting specifically that Corderries's propensity for violence might be increased by the smoking of marijuana since, as the trial judge pointed out, marijuana, as alcohol, affects people in different ways. Therefore, the trial judge clearly explained that the evidence Rouster's counsel was trying to elicit from Corderries would not be useful unless the predicate was laid that someone smoking marijuana has an increased propensity for violence. The trial court properly excluded the evidence under Rules 401, 402 and 403 of the Mississippi Rules of Evidence.
¶ 13. In Huggins v. State, 911 So.2d 614 (Miss.Ct.App.2005), a similar case, also before Judge Delaughter, Huggins's defense counsel tried to elicit the deceased shooting victim's blood alcohol content to aid the defendant's theory of self-defense. Id. at 616-17(¶ 4). While the trial judge allowed the testimony by the forensic pathologist, the judge gave the jurors a limiting instruction that they may only consider the victim's blood alcohol content in relation to the victim's state of mind at the time of the shooting, not as to whether the victim was the aggressor. Id. at 617(¶ 5). The trial judge reasoned, and we affirmed, that the testimony was inadmissible because Huggins's defense counsel did not present any evidence that an increased blood alcohol content caused the victim to have a propensity for violence. Id. Similarly, since Rouster did not meet the threshold for establishing any probative effect the testimony might have had, we find the testimony on whether Corderries had been smoking marijuana that morning was irrelevant.
¶ 14. Moreover, the testimony would not be admissible under an exception to Mississippi Rule of Evidence 404(a)(2), as Rouster argues, even if Rouster had laid a foundation for the relevancy of such character evidence at trial. Usually, evidence of a victim's character is irrelevant. M.R.E. 404(a)(2). The comment to this rule, however, states that in limited *319 instances, character of a victim may be relevant "where the defendant claims that the victim was the initial aggressor and that the defendant's actions were in the nature of self-defense." M.R.E. 404 cmt. However, in order to present this evidence, the defendant must offer evidence of an overt act of aggression perpetrated against him by the victim. Id. (citing Freeman v. State, 204 So.2d 842 (Miss.1967)). Once the act is proven, the defendant may then offer proof of the victim's character. Shinall v. State, 199 So.2d 251, 258 (Miss. 1967). Rouster notes that under Shinall, regarding a homicide, there are times when it could be proper to introduce testimony showing the intoxication of the deceased in order to show that it was necessary for the defendant to take the life of the deceased to protect himself or to prevent great bodily harm.[1]Id. at 259. Alternatively, the Shinall court explains that "evidence of the intoxication of the deceased is irrelevant where the testimony shows that the defendant was the aggressor, or there is no testimony evincing the necessity for the accused to kill the deceased." Id.
¶ 15. The proposed testimony on the victims' possible intoxication is not an exception to inadmissible character evidence for two reasons. First, at the time the defense counsel attempted to elicit this testimony, during the State's case-in-chief, Rouster had not established Corderries as the initial aggressor or claimed self-defense, thus it was irrelevant at that point in the trial. In Farmer v. State, 770 So.2d 953 (Miss.2000), the Mississippi Supreme Court found no error in the trial court's excluding an emergency room physician's testimony about the victim's blood alcohol content. Id. at 958(¶ 16). Even though the defense counsel claimed the evidence would support a self-defense claim because he thought the testimony would show the victim had a tendency towards violence when drunk, the testimony of the victim's intoxication on the night of the assault was found irrelevant because the self-defense claim had not yet been established. Id. Furthermore, in Farmer, the defense counsel did not attempt to recall the witness if and when relevancy was established, as the trial judge had allowed. Id. Similarly, in our case, at the time Rouster's counsel attempted to elicit alleged drug use there was no proof Corderries or Christopher may have been the aggressors or that Rouster acted in self-defense.
¶ 16. Second, as stated above, no evidence was presented that marijuana smoking is linked with a propensity for violence either generally or regarding Corderries specifically. The Mississippi Supreme Court, in Mallett v. State, 606 So.2d 1092 (Miss.1992), held that the intoxication of the victim, in and of itself, is not relevant. Id. at 1095. The Mallett court found no error in sustaining the prosecution's objection when the defense, claiming self-defense, called a forensic chemist to testify about the murder victim's blood alcohol content. Id. In Mallett there was no question the victim had been drinking "prior to his fatal encounter with Mallett. But it is not clear the relevance of such fact to any issue before the Court. [The victim] may have been a boozer of the worst kind, but that does not mitigate the severity of Mallett's felonious conduct." Id.
¶ 17. We acknowledge that older cases such as Shinall and Byrd v. State, 154 Miss. 742, 123 So. 867 (1929) hold that alcohol intoxication of the victim may be relevant in a claim of self-defense. Byrd *320 explains that the victim's "intoxication has an added element of relevancy when the testimony has shown . . . that the general reputation of the [victim] for violence was bad[.]" Id. at 749, 123 So. at 869. More modern precedent, however, emphasizes not whether the victim is intoxicated, but the victim's propensity for violence at the time of the crime. See Farmer, 770 So.2d at 958(¶ 16) (holding proper to exclude testimony of victim's blood alcohol content because relevancy not established at time introduced  testimony also excluded that would have shown victim's tendency towards violence when drunk); Huggins, 911 So.2d at 618 (¶¶ 9-12) (holding proper to exclude testimony of victim's alcohol intoxication  no evidence provided that victim's character was to behave violently, drunk or sober). The purpose of introducing the character evidence of the victim's intoxication is to further the defendant's self-defense claim by proving the victim, who had a propensity for violence, became more violent after intoxication. To the extent that the older authority holds evidence of intoxication is admissible in a self-defense claim, the trial court properly excluded such possible evidence by balancing its probative and prejudicial effects under Rule 403. The trial court found the proposed testimony would have no probative value because the possible testimony of marijuana usage was not linked to a propensity for violence. Also, the prejudicial fact the possible intoxication here is of an illegal substance  marijuana  and not mere alcohol, further outweighs any probative effect.
¶ 18. We find the trial court did not abuse its discretion in sustaining the State's objection to this line of questioning. This issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF COUNT ONE MURDER AND SENTENCE OF LIFE IMPRISONMENT, AND COUNTS TWO AND THREE AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS FOR EACH COUNT, WITH ALL SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The defense presents no argument that the murder victim, Rhonda, was intoxicated by any substance.