45 So.3d 283 (2010)
Paul David GRAVES, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2009-KA-00282-COA.
Court of Appeals of Mississippi.
February 23, 2010.
Rehearing Denied October 5, 2010.
*285 Erin Elizabeth Pridgen, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
EN BANC.
CARLTON, J., for the Court:
¶ 1. On July 23, 2008, a jury in the Harrison County Circuit Court convicted Paul David Graves, Jr., of the manslaughter of his brother, A.C. Graves. Graves was sentenced to serve fourteen years in the custody of the Mississippi Department of Corrections. Graves subsequently filed a motion for a new trial or, in the alternative, a motion for a judgment notwithstanding the verdict. The trial court denied the motion. Graves now appeals, asserting the following issues: (1) the trial court erred in failing to grant a mistrial; (2) the trial court erred in failing to grant his motion for a new trial; and (3) the trial court erred in excluding certain testimony regarding the victim. Finding no error, we affirm.

FACTS
¶ 2. Paul Graves (Graves) and A.C. Graves (A.C.) lived with their mother, Minnie Pearl Graves, in Gulfport, Mississippi. On the night of November 29, 2003, a group of friends traveled from Gulfport to New Orleans, Louisiana for a night of socializing and drinking. Graves, Fred Thompson, and Kevin Preston rode together in one car. A.C., Dwaninia Spann (A.C.'s girlfriend), Mike Graves (A.C.'s son), and another female rode in another car. The groups eventually ended up together in a hotel room. A.C. and Graves got into a fight and at some point during the argument, A.C. began waiving a gun and calling Graves a coward. There was testimony that Preston had given the gun to A.C. There was also testimony that both men had been drinking that night. Shortly after the argument, Graves and Thompson left the hotel and went back to Gulfport.
¶ 3. The rest of the group, including A.C. and Spann, arrived back in Gulfport around dawn the next day. Spann testified that she called Graves and Minnie to inform them that A.C. was on his way home. After dropping off his son, A.C., along with Spann, Preston, and the unidentified female, drove to his mother's house. Preston and the female exited the truck, while A.C. and Spann stayed in the truck to talk. At some point, Graves exited his mother's house and approached A.C. There are discrepancies as to what happened next; but ultimately, A.C. and Graves got into an argument, and A.C. was shot in the neck. There was conflicting testimony as to which brother was holding the gun that fatally shot A.C. Spann and Clyzell Smith, a neighbor, testified that A.C. was not holding a weapon. Graves and Preston testified that A.C. had a gun and that Graves's hands were empty when he came outside.
¶ 4. There was also conflicting testimony concerning Graves's demeanor at the time of the shooting. Smith stated that Graves came out of the house mad, was cursing, and headed straight for the truck. Spann testified that A.C.'s back was turned when Graves approached him. Spann also stated that Graves instigated the fight and kept pushing A.C. against the truck. Another witness, Preston, testified that when *286 Graves came out of the house, it was A.C. who was cursing at Graves. Preston did say that A.C. was not threatening to kill anyone, including Graves. Preston also admitted that he had consumed large amounts of alcohol that night and was "buzzing like crazy."
¶ 5. Graves testified that he tried to take the gun from A.C. but that it discharged as the two wrestled for control. Graves stated that they were "[t]ussling with the gun, and [I] got the gun and shot him." After A.C. was shot, Graves handed the gun to his mother. Minnie stated that this gun belonged to her. Minnie testified that when Graves left the house, his hands were empty. Minnie also testified that she saw a second gun on the ground beside A.C.'s body. Timothy Edwards, a police officer with the Gulfport Police Department, and Charles Bodie, a detective with the Gulfport Police Department, responded to the scene. Officer Edwards received the gun used to shoot A.C. from Minnie. Neither Officer Edwards nor Detective Bodie found a second gun at the scene. No other witnesses testified to seeing a second gun at the scene.
¶ 6. David Whitehead, a forensic scientist at the Mississippi State Crime Laboratory, testified that gunshot residue was found on the back of Graves's right hand. There was testimony that Graves is right-handed.
¶ 7. Graves was eventually arrested and indicted for murder. During trial, the jury was instructed on murder, manslaughter, and self-defense but ultimately convicted Graves of manslaughter.

DISCUSSION

I. MISTRIAL
¶ 8. In his first issue on appeal, Graves argues that the trial court should have granted a mistrial because of Spann's demeanor when testifying. During Spann's testimony, Graves's trial counsel asked to approach the bench. The following bench conference was not reported. At the end of Spann's testimony, the jury left the courtroom and the trial court noted Graves's objection to Spann's testimony. Graves argued that the trial court should grant a mistrial because Spann was "noticeably upset" and "boo[-]hooing and crying like a baby" during her testimony. Graves asserts that the State wanted to make Spann look more sympathetic to the jury. The trial court denied the motion. There is no mention in the record of any emotional outburst by Spann.
¶ 9. Absent an abuse of discretion, this Court will not find error with a trial court's decision to grant or deny a motion for a mistrial. Jordan v. State, 995 So.2d 94, 104 (¶ 21) (Miss.2008). In situations such as the one here, the supreme court has stated that the trial court is "in a better position to assess the effect of such an incident than is this Court on appeal." Ladner v. State, 584 So.2d 743, 753 (Miss. 1991). In Chase v. State, 645 So.2d 829, 848 (Miss.1994), the victim's widow became visibly upset and cried during her testimony. The defendant's request for a mistrial was denied. Id. The supreme court upheld the trial court's decision, finding that the victim's widow was an eyewitness; therefore, her testimony was far more important than any potential prejudice that might have resulted from her emotional display. Id.
¶ 10. Spann was present at the time of A.C.'s death, and her testimony concerning the events of the night was important. We cannot find that Spann's crying was so prejudicial as to deprive Graves of a fair trial. We find no abuse of discretion by the trial court in denying Graves's request for a mistrial.

*287 II. MOTION FOR A NEW TRIAL
¶ 11. In his next issue on appeal, Graves argues that the trial court erred in failing to grant his motion for a new trial. Specifically, Graves contends that the verdict was against the overwhelming weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). When reviewing the weight of the evidence, this Court sits as a thirteenth juror. Id.
¶ 12. Manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense...." Miss. Code Ann. § 97-3-35 (Rev. 2006).
¶ 13. Smith witnessed the shooting and stated that Graves was angry and yelling as he exited the house and approached A.C. Smith said the argument between the two brothers escalated to the point they were punching and pushing each other. Smith testified that as the brothers were yelling at each other and hitting each other, "[Graves's] arm come [sic] up, pow, the gun went off." Smith testified that the gun was in Graves's right hand and that A.C.'s hands were empty. There was some conflicting testimony as to where Smith was standing, but Smith stated without question that he saw the gun in Graves's hand.
¶ 14. Although Spann did not see Graves shoot A.C., Spann did testify that Graves came at A.C. holding a gun. Spann testified that A.C.'s hands were empty. Spann stated that Graves "just kept coming at A.C., and A.C. kept pushing him off saying, get off of me." Spann heard A.C. say at one point, "So what you got a gun[?] [W]hat you going to do with it[?][Y]ou going to kill me[?] I'm ready to die." As Spann turned to the house to get Minnie, she heard the gunshot.
¶ 15. Preston testified that A.C. was armed and not Graves. Preston stated that A.C. was drunk, had carried the gun on his lap from New Orleans, and was angry at Graves. Preston stated that Graves never had the gun, but that A.C. was holding the gun when he fell, and the gun discharged. Preston admitted that, at the time, he refused to make a statement to the police. Preston told the responding police that he had not seen anything. Although Preston claimed to have seen the gun in A.C.'s hand the entire time, his testimony conflicts with Graves's admission that he had the gun in his hand when A.C. was shot.
¶ 16. Viewing the evidence in the light most favorable to the verdict, we find that the verdict was not against the overwhelming weight of the evidence. Testimony at trial presented a factual dispute for the jury's resolution. The jury also heard different accounts about the incident in the hotel room in New Orleans where A.C. was waiving a gun and yelling at Graves. The jury could reasonably infer that Graves was angry at A.C. from the earlier incident and acted accordingly. The jury clearly found that A.C.'s death was not accidental but that Graves killed A.C. in the heat of passion.
¶ 17. Graves also argues that newly discovered evidence warrants a new trial. At the hearing on the motion for a new trial, Waillene Jennings, Graves's sister, testified that she saw Spann at the hospital the night of the shooting and that Spann's account of the incident was inconsistent with her testimony during trial. *288 Jennings stated that Spann suggested the shooting was an accident and A.C. had instigated the argument. In order to qualify as newly discovered evidence, it "must be evidence which could not have been discovered by the exercise of due diligence at the time of trial, as well as being almost certainly conclusive that it would cause a different result." Frost v. State, 781 So.2d 155, 158 (¶ 7) (Miss.Ct.App.2000). Furthermore, cumulative and impeachment evidence is not considered newly discovered evidence sufficient to warrant a new trial. Carr v. State, 873 So.2d 991, 997 (¶ 3) (Miss.2004). Jennings's testimony, although hearsay, would have been used for impeachment purposes and Graves's trial counsel admitted as such during the motion hearing. We cannot find that this testimony was sufficient to warrant a new trial.

III. EXCLUSION OF TESTIMONY
¶ 18. In his final issue on appeal, Graves argues that the trial court erred in excluding evidence of A.C.'s previous incarceration. We review matters relating to the admission or exclusion of evidence using the familiar abuse-of-discretion standard. Brown v. State, 965 So.2d 1023, 1026 (¶ 10) (Miss.2007).
¶ 19. A.C. shot his brother in the leg sometime in 1997 and, on an unrelated charge, was sent to federal prison in May 1998 where he spent approximately five years. A.C. was released approximately one month prior to his death.
¶ 20. During the motion in limine hearing, Graves's attorney stated the following:
Judge, I don't plan toI don't think I plan to offer any such testimony. But on the rest of the story, the reason why it may come in, these two brothers were arguing with each other. And the reason they were arguing is, A.C. just finished doing a federal sentence, and Paul didn't put money on the books for him and take care of him while he was in jail. And that's why A.C. [was] mad.
Graves's attorney clearly stated that he was not intending to offer testimony concerning A.C.'s incarceration. Graves's attorney anticipated that the defense witnesses would mention why the brothers had been arguing. Graves stated more than once during the hearing that the jury would wonder why these two brothers had been arguing that night. Graves was not attempting to show that the conviction itself was related to A.C.'s prior shooting of Graves sometime in 1997.
¶ 21. The trial court ruled in favor of the State, refusing to allow evidence of prior bad acts. The trial court further noted the following to Graves's attorney: "If somehow [the evidence of prior bad acts] works into your theory of self-defense, that somehow you feel that the testimony would be relevant, I'll reconsider it."
¶ 22. During the direct examination of Graves, his attorney asked him whether A.C. had ever pulled a gun on him. Graves answered, "Yeah. He shot me in my right leg." His attorney began to ask Graves to show the jury his leg when the State objected as to relevance. The trial court asked, "Why wouldn't that be considered a prior bad act that's not admissible?" Graves responded that the evidence would support a self-defense claim and would show why Graves might have been afraid of his brother. The State responded that there was no evidence aside from Graves's testimony that A.C. had actually shot him. Graves never filed a police report against A.C. After a thorough discussion, the trial court decided to allow Graves to testify about the fact that A.C. had shot him in the leg several years before. At no time during this discussion was Graves attempting to get into evidence the fact that AC had been in federal prison. Graves was *289 only concerned with the prior incident between the brothers.
¶ 23. Mississippi Rule of Evidence 404(b) allows evidence of other crimes, wrongs, or acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Aside from admissibility under Mississippi Rule of Evidence 404(b) for motive and reasonable apprehension of harm, in self-defense cases, the victim's character may come into issue if the victim was shown to be the initial aggressor. See M.R.E. 404 cmt.; Rouster v. State, 981 So.2d 314, 318-19 (¶ 14) (Miss.Ct.App.2007) (to offer proof of victim's character, the defendant must first offer evidence that the victim is the aggressor and that the defendant acted in self-defense; to do so, the defendant must offer evidence of an overt act by the victim against the defendant). In this case, Graves's defense theory asserted that A.C. was the aggressor. Though the dissent overlooks Graves's preservation of this issue, we find he sufficiently preserved this issue during his arguments during the hearing on the State's motion in limine and by his attempt to assert the evidence again during his own testimony.
¶ 24. To support his theory that A.C. was the initial aggressor in their altercation, Graves sought to admit evidence to show that A.C. was angry with him for failing to deposit money into A.C.'s prison account during A.C's incarceration. Graves sought to show that he and A.C. were arguing because of an animus towards Graves because Graves failed to deposit money into A.C.'s prison account during A.C.'s seven-year incarceration that ended the month prior to A.C's death. That evidence supports Graves's theory that A.C. was the initial aggressor and that Graves possessed a reasonable apprehension of harm by A.C. See M.R.E. 404 cmt.; Rouster, 981 So.2d at 318-19 (¶ 14).
¶ 25. Furthermore, evidence that A.C. had only recently been released from prison, taken in the context of Rule 404(b), also supported Graves's self-defense theory. The trial judge evaluated the evidence of A.C.'s previous incarceration under the analysis utilized for evaluating the admission of character evidence of past bad acts and impeachment of evidence using a prior conviction. However, the trial judge should have analyzed the evidence proposed pursuant to Rule 404(b), because the evidence was pertinent to show A.C.'s motive and intent, which form the basis of his defense that A.C. was the initial aggressor.
¶ 26. Despite the trial judge's improper analysis in prohibiting admission of A.C.'s prior incarceration, this issue raises at most only harmless error. The jury received evidence of the existing animosity between the brothers, the arguments between them on the night of the shooting, and A.C.'s previous shooting of Graves in the leg. Graves also received a self-defense instruction. Therefore, the jury received evidence of Graves's defense theory and was able to consider Graves's defense theory of self-defense. Therefore, Graves was not prohibited from presenting his self-defense theory at trial for consideration by the jury. Therefore, the exclusion of the evidence of A.C.'s previous incarceration constitutes harmless error.
¶ 27. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF FOURTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
*290 GRIFFIS, ISHEE AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. IRVING, J., CONCURS IN RESULT ONLY. LEE, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., MYERS, P.J., AND ROBERTS, J.
LEE, P.J., concurring in part and in result:
¶ 28. While I agree with the majority's affirmance of Paul Graves's conviction, I do not find that the trial court erred in excluding evidence of A.C. Graves's prior incarceration. The majority concludes that it was error for the trial court to exclude evidence of A.C.'s prior incarceration, but the error was harmless because the jury heard evidence of Graves's theory of defense. The majority states that Graves sought to admit evidence to show that A.C. was angry with him for failing to deposit money into A.C.'s prison account. The majority contends that Graves preserved this argument for appeal. I disagree. Although Graves's attorney anticipated that defense witnesses might mention why the brothers had been arguing, Graves's appellate brief fails to mention this particular argument on appeal. Furthermore, this particular argument was not raised in Graves's post-trial motions.
¶ 29. Regardless of whether his objection was preserved, Graves did not raise this argument on appeal. Rather, Graves states a different reason for allowing the jury to hear of A.C.'s incarceration, namely that their mother, Minnie Graves, did not keep a gun in the house because A.C. was a convicted felon. Graves also raised this argument for the first time during his motion for a new trial. The majority does not discuss this particular argument, only focusing on the purported argument over money. Again, this argument was not raised in Graves's appellate brief. It is not the habit of this Court to go beyond what is argued on appeal in search of error. Graves, having objected at trial, cannot present different grounds for the objection on appeal. Duplantis v. State, 708 So.2d 1327, 1346-47 (¶ 96) (Miss.1998).
¶ 30. For the foregoing reasons, I respectfully concur in part and in the result.
KING, C.J., MYERS, P.J., AND ROBERTS, J., JOIN THIS OPINION.