IRVING, P.J.,
for the Court:
¶ 1. Eric Davis was convicted, in the Warren County Circuit Court, of possession of a firearm by a convicted felon and murder after he shot his next-door neighbor’s son, Devin Moore. Feeling aggrieved by his conviction, Davis appeals and alleges that: he was entitled to a jury instruction on the defense of necessity regarding the possession of a firearm by a felon; the weight of the evidence is against his conviction, and the circuit court erred in refusing to allow testimony regarding the presence of tetrahydrocannabinol (THC) in Moore’s blood at the time of the shooting.
¶ 2. We find no merit to Davis’s contentions and affirm the circuit court’s judgment.
FACTS
¶ 3. Davis had a perpetually combative relationship with his neighbor, Helen Williams. Williams was Moore’s mother, although Davis had apparently never spoken to Moore prior to the shooting. Regardless, Davis testified that Williams told him multiple times that Davis “was lucky that she was keeping her boys off [his] ass.” Davis stated that due to the acrimonious relationship between him and Williams, law enforcement was called at least three times, two of which were in May and June 2008. Davis testified that Williams came to his house with a man a few days before the shooting and threatened to kill him. Davis stated that the man with Williams had a large handgun. Davis testified that this incident caused him to procure a pistol for his safety because he feared for his life. Davis stated that he kept the pistol locked in a toolbox *47 in a non-functioning truck that was in his yard.
¶ 4. On June 25, 2008, the evening of the shooting, Davis was working in his front yard when Moore approached him. Davis testified that Moore said, “Didn’t I tell you that I was going to kill you if you said something else to my mother” and “I’m going to kill you,” and then brandished a firearm. Despite having stated that he kept his pistol locked in a toolbox, Davis testified that he had kept his pistol with him for his safety and that he picked the pistol up from the ground after Moore approached him. At that point, Davis shot Moore repeatedly. Moore was shot five times: in his chest, left thigh, right buttock, mid back, and upper left back. Notably, three of these entry wounds were located in Moore’s back. After shooting Moore, Davis fled the scene and disposed of the murder weapon, which was never recovered. Davis turned himself in to the police shortly after fleeing. Paramedics arrived soon after Moore was shot. One of the paramedics who attempted to revive Moore testified that Moore was essentially dead when they arrived, although he was not pronounced dead until he reached the hospital.
¶ 5. Angelica[1] Burgess, Moore’s friend, testified that she was on the phone with Moore shortly before the shooting. She stated that she heard Moore say: “No, home boy, I don’t have any beef with you,” and then, “No, it wasn’t me that pulled a gun on you.” The line then went dead. Burgess testified that she learned the next day that Moore had been killed. Documents in the record show that Burgess was on the phone with Moore approximately three minutes before 911 was called.
¶ 6. Some neighborhood boys were nearby at the time of the shooting; although their stories were somewhat inconsistent, they generally testified that they heard gunshots and then observed Davis shoot Moore several times as Moore lay on the ground. One of the young men, Justin Williams,[2] was eighteen years old at the time of the shooting and was standing on a corner near Davis’s home with some friends when they heard gunshots being fired. Justin testified that they ran toward the sound of the gunshots and saw Davis shooting Moore. Justin explained that Moore was face-down on the ground for the final gunshots. Williams also heard the gunshots and ran outside. Williams testified that she asked Davis why he had shot her son, and Davis responded that Moore also had a gun.
¶ 7. Justin testified that he moved the gun that Moore had been holding after Williams instructed him to do so. Williams testified that she observed the gun when she went to hold Moore and that she asked for someone to move the gun away from her. Despite any efforts to move or dispose of the gun, it was discovered in Davis’s front yard by law enforcement. Gregory Wright, one of Justin’s friends, was with him at the time of the shooting. Wright testified that everyone else that they were with ran away when they heard the gunshots. Wright testified, like Justin, that he observed Moore being shot as someone stood over him. Wright identified Davis as the shooter. Although Wright and Justin both testified that Moore was face down when he was shot, Williams admitted that she told the police that Moore was face up when she ran to him.
*48 ¶ 8. Lieutenant Linda Hearn, with the Vicksburg Police Department, testified at trial regarding the size and locations of various blood drops and pools. During her testimony, the jury was taken to the scene of the shooting to observe the crime scene while Lieutenant Hearn and the attorneys referred to the actual scene. Doctor Stephen Hayne, a pathologist, testified that he examined Moore’s body. Dr. Hayne described five gunshot wounds, three of which were located in Moore’s back. Dr. Hayne opined that several of Moore’s wounds were consistent with Moore “lying prone face down” at the time he was shot, although Dr. Hayne testified that the position of the wounds could also be consistent with other scenarios.
¶ 9. Rochelle Williams, Davis’s fiance, testified at trial. After first attempting to plead the Fifth Amendment, Rochelle essentially testified that she could not remember anything that had happened on the night of the shooting. Rochelle’s pretrial statement to the police was then played for the jury. In that statement, Rochelle told the officer that, approximately ten minutes before the shooting, Davis entered their house and complained about Moore allowing Williams’s dog to defecate on Davis’s lawn.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Jury Instruction

¶ 11. Davis claims that the circuit court improperly denied his proposed necessity defense to the charge of felonious possession of a firearm. “[A] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Newell v. State, 49 So.3d 66, 74 (¶ 20) (Miss.2010) (quoting Hearn v. State, 3 So.3d 722, 738 (¶ 45) (Miss.2008)).
¶ 12. There is no dispute as to Davis’s status as a convicted felon. Additionally, although the firearm that Davis used to shoot Moore was never presented at trial, as it was never recovered, there was sufficient evidence to establish that Davis possessed a firearm on the night in question. In fact, Davis admitted that he had purchased a pistol to protect himself. In other words, there is little doubt that Davis was a convicted felon in possession of a firearm. However, a defendant can prove the defense of necessity if he shows: “(1) the act charged was done to prevent a significant evil; (2) there ... was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided.” Stodghill v. State, 892 So.2d 236, 238 (¶ 8) (Miss.2005) (citing McMillan v. City of Jackson, 701 So.2d 1105, 1107 (¶ 8) (Miss.1997)). This Court has applied the general rule regarding a defense of necessity in the context of a felon in possession of a firearm. See Mayers v. State, 42 So.3d 33, 41 (¶ 25) (Miss.Ct.App.2010); Williams v. State, 953 So.2d 260, 263 (¶ 9) (Miss.Ct.App.2006).
¶ 13. We find that the circuit court properly denied Davis’s proposed necessity instruction, as Davis provided an insufficient factual basis to support the instruction. Although there was testimony about an alleged threat by Williams days before the shooting, there is no evidence showing the necessity of obtaining a firearm. For example, Davis could have called the police in response to the alleged threat, but he made no attempt to do so. There is nothing to suggest that, at the time of the *49 shooting, Davis attempted to retreat inside his house or pursue a course other than keeping a gun with him at all times.
¶ 14. As Davis provided an insufficient factual basis to support a necessity instruction, the circuit court acted properly in denying his proposed instruction. This contention of error is without merit.

2. Weight of the Evidence

¶ 15. In looking at the weight of the evidence, we will allow a jury’s verdict to remain in effect unless “to allow it to stand would sanction an unconscionable injustice.” Long v. State, 52 So.3d 1188, 1192 (¶ 11) (Miss.2011) (quoting Boyd v. State, 977 So.2d 329, 336 (¶ 27) (Miss. 2008)). In considering the weight of the evidence, we review the evidence “in the light most favorable to the verdict.” Id. (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)).
¶ 16. Davis contends that the verdict is against the overwhelming weight of the evidence because he acted in self-defense. Ultimately, “the issue of justifiable self-defense presents a question of the weight and credibility of the evidence, rather than sufficiency, and is to be determined by [the] jury.” Jones v. State, 39 So.3d 860, 865 (¶ 28) (Miss.2010) (citation omitted). Furthermore, “[o]n issues of witness credibility, the jury determines the weight and credibility of each witness’s testimony.” Thomas v. State, 48 So.3d 460, 469 (¶ 20) (Miss.2010) (citing Nelson v. State, 10 So.3d 898, 905 (¶29) (Miss.2009)). Although conflicting testimony was presented, the relevant facts weighing in favor of the verdict are: (1) Moore was shot five times, including three wounds to his back; (2) Davis admitted to shooting Moore; (3) multiple eyewitnesses testified that they observed Davis standing over Moore and firing into Moore’s prone body; (4) although Davis testified about receiving a threat to his life, he never called the police or attempted to resolve the threat in any other way; (5) Burgess was on the phone with Moore shortly before he was shot and heard Moore telling Davis that he did not have any problem with Davis; and (6) Davis disposed of the murder weapon before turning himself in to the police.
¶ 17. After hearing all of the evidence, the jury determined that Davis was guilty of murder. Implicit in that finding was a rejection of the notion that Davis had acted in self-defense. We cannot impose our judgment for the jury’s, as there is nothing to suggest that allowing Davis’s conviction to stand will sanction an unconscionable injustice.
¶ 18. This contention of error is also without merit.

3. THC Evidence

¶ 19. Finally, Davis contends that the circuit court erred in disallowing evidence regarding the presence of THC in Moore’s blood at the time of his autopsy. Davis contends that the traces of THC in Moore’s blood “suggest ... that Moore may have been under the influence of a mind-altering substance at the time of the shooting and [was] possibly the initial aggressor.”
¶ 20. Davis acknowledges our holding in Rouster v. State, 981 So.2d 314, 318 (¶ 12) (Miss.Ct.App.2007), wherein we held that a circuit court was correct in refusing to admit evidence that two of the victims had been smoking marijuana moments before their confrontation with the defendant. In Rouster, we noted that the defendant had failed to offer any evidence showing that “smoking marijuana increases a person’s propensity for violence generally.” Id. Davis contends that the same holding should not apply to him because “unlike the defendant in Rouster, Mr. *50 Davis offered his own testimony suggesting that Moore had threatened him with his ... pistol.... ” However, Davis’s testimony that Moore threatened him with a pistol still offers nothing to show that marijuana had any effect on Moore’s propensity for violence. Accordingly, the circuit court properly refused to allow this evidence.
¶ 21. There is no merit to this contention.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE AND COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF FIVE YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.

. Burgess's name is also shown as "Angela” at points in the record.

. Justin is not related to Moore or Williams.